**Steven A. WOLOTSKY,
Plaintiff–Appellant,**

**v.**

**Ralph HUHN; Jerome T. Kraker; and Portage Path Community Mental Health Center, Defendants–Appellees.**

**No. 91–3677.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1992.

Decided March 4, 1992 *.

---

* This decision was originally issued as an "unpublished decision" filed on March 4, 1992. On

Edward L. Gilbert, Akron, Ohio (argued and briefed), for plaintiff-appellant.

March 18, 1992, the court designated the opinion as one recommended for full-text publication.

Joseph M. Holden, John W. Solomon (briefed), Sallie Conley Lux (argued), and Deborah K. Urban, Brouse & McDowell, Akron, Ohio, for defendants-appellees.

Before: MILBURN and RYAN, Circuit Judges; and ZATKOFF, District Judge.**

MILBURN, Circuit Judge.

Plaintiff Steven A. Wolotsky appeals the district court's grant of summary judgment for defendants and the dismissal of his pendent state law claims in this civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985. Seeking damages and declaratory relief, plaintiff alleged that he was denied due process and the equal protection of the law when he was terminated from his employment. The principal issues presented for review are: (1) whether the district court erred in granting summary judgment for defendants on plaintiff's section 1983 and section 1985 claims, and (2) whether the district court erred in limiting the scope of discovery pursuant to the motion for summary judgment to the issue of whether defendant Portage Path Community Mental Health Center was a state actor for purposes of section 1983. For the reasons that follow, we affirm.

## I.

### A.

Plaintiff is a social worker licensed by the State of Ohio. Defendant Portage Path Community Mental Health Center ("Portage Path") is a private non-profit corporation which provides counseling and mental health services to the community. Approximately sixty persons are employed by Portage Path at four locations in Summit County, Ohio. Portage Path charges clients on a sliding scale based upon the individual's ability to pay.

Portage Path contracts with the Summit County Alcohol Drug Addiction and Mental Health Services Board to provide mental health services for the county. The contract delegates the role of direct provider of public mental health services from the county to Portage Path. The contract also details all the funds from the county, state or federal governments which are provided to Portage Path to permit it to provide services. Further, the contract requires Portage Path to comply with applicable regulations, and to submit to a review of the care given at Portage Path as well as audits of financial records documenting spending at Portage Path. During the five-year period prior to the commencement of this action, Portage Path derived approximately 75 percent of its funding as a result of the contract with the County Mental Health Services Board, and patient fees supplied approximately 25 percent of Portage Path's annual funding.

The governing body of Portage Path is a fourteen-member Board of Trustees. The Board makes personnel policies for Portage Path and has the authority to appoint an executive director to manage the day-to-day activities of Portage Path. New trustees are chosen by the Board. Neither state, county or federal officials have any input in the selection of trustees.

Defendant Jerome T. Kraker is the Executive Director of Portage Path. The third defendant named in plaintiff's complaint, Ralph Huhn, is a psychologist at Portage Path. He provides direct counseling services to clients of Portage Path who suffer from mental health problems and recommends a course of treatment for the clients.

Plaintiff was hired as a social worker at Portage Path in August 1988. His duties included providing counseling to clients with mental health problems. Prior to his employment at Portage Path, plaintiff was employed at another private, non-profit mental health clinic. At the time plaintiff was hired at Portage Path, he was participating in Ohio's Public Employee Retire-

** Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

ment System ("PERS"). Portage Path worked with the County Mental Health Services Board to allow plaintiff and two other employees, who had previously contributed to PERS, to continue such contributions while employed at Portage Path. This option was not made available to other employees of Portage Path, but it was made available to plaintiff due to provisions of state law.

In addition, between August 1988 and December 1989, Portage Path leased office space from the State of Ohio for a nominal fee and used the space to operate a mental health clinic in the northern quadrant of Summit County. The state rented the facility to Portage Path for a nominal fee after the state lost its former tenant at the site. The state needed a new mental health care provider at that location because the facility had been constructed with grant monies which required the provision of mental health services from the building. The state would have been required to repay the construction grant if mental health services were not provided from the building.

On January 21, 1990, plaintiff was terminated as the result of allegations from a patient at Portage Path that plaintiff had performed homosexual acts on the patient. The termination occurred without warning, and plaintiff was not accorded a hearing prior to his termination.

**B.**

Plaintiff filed his complaint on December 10, 1990. The complaint alleged five different causes of action. The first cause of action alleged a violation of 42 U.S.C. § 1983 based on plaintiff's claim that he was denied due process and equal protection of the law in connection with the decision to discharge him. The second cause of action alleged a violation of 42 U.S.C. § 1985 and claims that defendants, as state actors, conspired to deprive plaintiff of equal protection and due process in connection with his discharge. The three remaining claims were state law claims for breach of contract, slander and defamation, and the intentional infliction of serious emotional distress.

At a pretrial conference on March 4, 1991, defendant Portage Path informed the court that it intended to seek summary judgment on the federal claims on the grounds of lack of federal court jurisdiction. Consequently, the district court limited the initial discovery to the issue of whether Portage Path acted under color of state law in terminating plaintiff.

On April 18, 1991, Portage Path filed a motion for partial summary judgment on the section 1983 and section 1985 claims, on the ground that Portage Path did not act under color of state law in terminating plaintiff. On June 21, 1991, the district court granted the motion for partial summary judgment concluding that Portage Path did not act under color of state law in terminating plaintiff. Further, the district court declined to exercise pendent jurisdiction over the remaining state law claims and dismissed them without prejudice. This timely appeal followed.

**II.**

**A.**

This court reviews a district court's grant of summary judgment de novo. See *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). Viewing the evidence in the light most favorable to the nonmoving party, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

**B.**

■ Plaintiff challenges the grant of summary judgment, arguing that defen-

dant Portage Path was a state actor for purposes of section 1983. Under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law. *See Jones v. Duncan*, 840 F.2d 359, 361–62 (6th Cir.1988). The principal inquiry in determining whether a private party's actions constitute "state action" under the Fourteenth Amendment is whether the party's actions may be "fairly attributable to the state." *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Supreme Court has set forth three tests to determine whether the challenged conduct may be fairly attributable to the state in order to hold the defendants liable under section 1983. These tests are: (1) the public function test, *West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 2255–2256, 101 L.Ed.2d 40 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978); (2) the state compulsion test, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721–26, 81 S.Ct. 856, 859–62, 6 L.Ed.2d 45 (1961).

■ Plaintiff cannot establish that defendant is a state actor under the public function test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections, *Flagg Bros.*, 436 U.S. at 149, 98 S.Ct. at 1729, or eminent domain, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). With regard to this case, providing mental health services has not been a power which has traditionally been exclusively reserved to the state.

■ Plaintiff cannot establish that Portage Path was a state actor under the state compulsion test. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785. In this case, although the state provided a significant portion of the funding of Portage Path, the state did not choose the members of the Board of Trustees, nor did it choose the executive director or make personnel policies or decisions for Portage Path. Thus, nothing in the record suggests that the state exercised such coercive power or provided such encouragement as to make Portage Path's personnel decision state action.

■ Nor can plaintiff establish that defendant was a state actor under the symbiotic relationship test. Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *See Jackson*, 419 U.S. at 351, 95 S.Ct. at 453; *Burton*, 365 U.S. at 724–25, 81 S.Ct. at 861–62. Merely because a business is subject to state regulation does not by itself convert its action into state action. *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453. Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983. *See Bier*, 717 F.2d at 311.

### C.

■ Plaintiff argues that all Portage Path's connections with the state of Ohio taken together make it a state actor for purposes of section 1983. However, none of the circumstances of this case, considered separately or together, make Portage Path a state actor for section 1983 purposes.

First, the fact that Portage Path derives a significant portion of its funding from the government does not convert it into a state actor. The actions of a private entity do not become state action merely because the government provides substantial funding to the private party. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 840, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). *See also Crowder v. Conlan,* 740 F.2d 447, 450 (6th Cir.1984). Second, the fact that Portage Path's contract with the Mental Health Services Board required it to comply with applicable state regulations did not convert it into a state actor. State regulation of a private entity, even if it is extensive and detailed, is not enough to support a finding of state action. *See Jackson,* 419 U.S. at 350, 95 S.Ct. at 453; *Crowder,* 740 F.2d at 451. Rather, to show state action, the complaining party must demonstrate a sufficient nexus between the challenged action and the regulatory scheme alleged to be the impetus behind the private action. *Id.* Plaintiff cannot demonstrate a nexus between the state regulation of Portage Path and his discharge because the state regulation of Portage Path did not involve the personnel policies at the facility which were made by the board of trustees. Third, the fact that Portage Path was significantly involved in performing a public contract does not convert plaintiff's discharge into state action. Acts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts. *See Rendell–Baker,* 457 U.S. at 840–41, 102 S.Ct. at 2770–71.

Fourth, the fact that Portage Path previously leased one of its facilities from the state at a nominal fee does not make plaintiff's discharge state action. In *Crowder,* this court rejected a similar claim. The plaintiff in *Crowder,* a physician, brought a section 1983 action against a hospital asserting that the denial of his staff privileges violated his civil rights. The plaintiff in *Crowder* alleged that state action was shown by the fact that the hospital facilities were owned by the county and leased back to the hospital. We rejected the assertion that this arrangement was suffi-

cient to show the existence of state action. *See Crowder,* 740 F.2d at 452–53. In *Crowder,* we concluded that although the county was the owner and lessor of the hospital, the county was not involved in the day-to-day operation of the hospital, and no link had been shown between the lease arrangement and the decision of the hospital to restrict plaintiff's staff privileges.

This case is similar to *Crowder.* Although Portage Path leased one of its facilities from the state at a nominal cost, that lease arrangement had no connection to the decision to discharge plaintiff Wolotsky. In this case, the county played no role in the day-to-day operation of Portage Path, none of the members of the board of trustees who made personnel policy for Portage Path were county officials or employees, and nothing in the record suggests that the lease arrangement played a role in the decision to discharge plaintiff. Indeed, the lease arrangement had terminated prior to the decision to terminate plaintiff.

Fifth, the fact that plaintiff contributed to Ohio's Public Employees Retirement System (PERS) while employed at Portage Path does not convert his discharge into state action. Sometime prior to his employment at Portage Path, plaintiff began contributing to PERS. Moreover, immediately prior to being employed at Portage Path, he performed essentially the same duties for another private non-profit mental health provider. When plaintiff was employed at Portage Path, he and two other new employees petitioned the PERS office to determine their rights to remain in PERS under Ohio law. Plaintiff was permitted to remain in PERS pursuant to state law. Ohio Rev.Code Ann. § 145.01(A)(2) (Anderson 1990). This section of the Ohio Revised Code is implemented through Ohio Administrative Code § 145–5–05(A)(3)(b) which recognizes that an employee of a private contract agency who was a member of PERS at the time of his employment by the private contract agency and who continues to perform the same or similar duties for the private agency which he previously performed is deemed to be a public employee of the agency who contracted with the

private agency. Further, section 145–5–05(A)(2) specifically applies to county or community mental health and mental retardation boards. However, although plaintiff was deemed to be a public employee for PERS purposes, under state law he was deemed to be a public employee only for that limited purpose. *See, e.g., Spitaleri v. Metro Regional Transit Authority,* 67 Ohio App.2d 57, 426 N.E.2d 183, 185 (1980). Chapter 145 of the Ohio Revised Code is unequivocal as to its subject matter, the PERS, and it exemplifies a legislative intent that certain employees are public employees for the specific and limited purpose of participating in PERS. Thus, plaintiff's participation in PERS does not make his discharge state action.

Finally, plaintiff argues that the dissent in this court's decision in *Adams v. Vandemark,* 855 F.2d 312 (6th Cir.1988), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989), and the Supreme Court's decision in *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), herald a new functional test for determining whether a private entity acts under color of state law. However, even assuming arguendo that the decision in *West* and the dissent in *Vandemark* do herald a new functional test for determining whether a private entity acts under color of state law, such a new test would be of no avail to plaintiff.

In *West,* the Court concluded that a physician who is under contract with the state to provide medical services to inmates at a state-prison hospital acts "under color of state law" for section 1983 purposes. *West,* 487 U.S. at 54, 108 S.Ct. at 2258. The physician had been sued under section 1983 based upon his treatment of an injured inmate. In concluding that the physician was a state actor, the Supreme Court in *West* stated that the dispositive issue in the case was the relationship between the state, the physician, and the prisoner, and that the physician's function while working for the state determined whether he was acting under color of state law. *West,* 487 U.S. at 55–56, 108 S.Ct. at 2258–59. Applying *West* to this case supports the district court's finding that defendants were not

acting under color of state law when they discharged plaintiff Wolotsky.

The physician in *West* was an independent contractor under contract to the state to provide services to custodial inmates who did not have the opportunity to obtain the services of another physician. Thus, *West* involves the professional judgment of a physician where the state was under a legal obligation to provide such professional services to its custodial inmates, *and the state had contracted with the physician to provide his professional services in fulfillment of the state's legal obligation.* However, in this case, the dispositive issue is not plaintiff Wolotsky's services, but rather the decision to discharge him. An analysis of the decision to discharge plaintiff even in light of *West* shows that the decision was not made under color of state law. Although Portage Path in this case was under contract to the state, that contract gave the state no input in the personnel decisions of Portage Path. The state had no interest in the personnel decisions of the board of Portage Path because those personnel decisions were not directly related to any legal obligation of the state. Thus, the relationship between defendant Portage Path, plaintiff, and the state with regard to personnel decisions by Portage Path shows that these decisions were not state action.

Similarly, even if the reasoning of Judge Merritt's dissent in *Adams* were applied to this case, the result would be a conclusion that the decision to discharge plaintiff was not state action. In his dissent in *Adams,* Judge Merritt drew a distinction between those entities which could be characterized as unquestionably private parties interacting with the state and entities whose previous role was not unquestionably private, but who previously functioned as part of the government.

He characterized the actions of the former as not state action. An examination of the facts relied on in the dissent shows that under the standard utilized by Judge Merritt, Portage Path would not be characterized as a state actor in this case.

In *Adams,* the private entity, HDC, had been a federal agency, created by the government. Moreover, by law, one-third of the board members of HDC were public officials. Thus, the government officials in *Adams* had a large degree of control over the agency's actions, and the dissent would have characterized HDC as a state actor. In this case, however, no such degree of government control was present. Not only was Portage Path not required to have government officials on its board of trustees, there were apparently no government officials on the board at the time of plaintiff's termination. Moreover, there is no suggestion in the record that either the state or federal government had a connection with the creation of Portage Path. Therefore, even if we were to apply the standard utilized by the dissent in *Adams,* which we could not do, the record shows that Portage Path was unquestionably a private actor which was interacting with a government agency.

Based on the foregoing analysis, we conclude that the district court correctly found that Portage Path was not a state actor for purposes of section 1983. Therefore, the district court's grant of summary judgment for defendants on plaintiff's section 1983 claims was proper.

### D.

■ Plaintiff argues that the district court erred in granting summary judgment in favor of defendants on his section 1985 claim. 42 U.S.C. § 1985(3) does not require state action: it reaches private conspiracies. *See Griffin v. Breckenridge,* 403 U.S. 88, 101–2, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971). However, section 1985(3) also requires that there be some racial or other class-based invidiously discriminatory animus behind the conspirators' action. *See United Broth. of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 834, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983). Although plaintiff has alleged the existence of a conspiracy, his complaint does not satisfy the requirement of racial or other class-based, discriminatory animus. In his complaint,

plaintiff asserted that he was discharged from his employment based on unfounded allegations that he performed homosexual acts on a patient at Portage Path. Nowhere in his complaint does plaintiff plead that his discharge was related to racial or other class-based considerations. Therefore, the grant of summary judgment was proper with regard to plaintiff's section 1985 claims.

### E.

■ Furthermore, the district court properly dismissed plaintiff's pendent state law claims without prejudice. Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits. *See Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 917 (6th Cir.1991) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

### F.

■ Finally, contrary to plaintiff's argument, the district court did not abuse its discretion in limiting discovery to the question of whether defendants were acting under color of state law when they discharged plaintiff. The discovery rules vest broad discretion in the trial court. An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice. *See Ghandi v. Police Dep't of City of Detroit,* 747 F.2d 338, 354 (6th Cir.1984). The district court's limitation on discovery did not substantially prejudice plaintiff in this case.

Plaintiff argues that he was hampered in establishing state action by the limitation on discovery. During the deposition of defendant Kraker plaintiff attempted to ask Kraker about the internal policies of Portage Path and whether Kraker had followed those internal policies in terminating plaintiff from his employment. Defendants' counsel objected to the questions as beyond the scope of discovery and refused

to allow Kraker to answer the question. Subsequently, the district court denied plaintiff's motion to compel a response from defendant Kraker finding that the internal termination policies of Portage Path had no bearing on the issue of whether it was a state actor.

As discussed above, the factors which are relevant to determining whether Portage Path was a state actor are its external ties to the state, not its internal policies. Moreover, even if Kraker failed to follow Portage Path's internal personnel policies in discharging plaintiff from his employment, that would not be sufficient to convert Portage Path into a state actor. Thus, plaintiff was not substantially prejudiced by the limitation on the scope of discovery.

### III.

For the reasons stated above, the district court's judgment is AFFIRMED in its entirety.