57 F.3d 1070
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 MBA SYSTEMS AUTOMATION, INC., Plaintiff-Appellant,
v.
DIGITAL EQUIPMENT CORPORATION, Defendant-Appellee.
 No. 94-3412.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges; and QUIST, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant, MBA Systems Automation, Inc., (MBA) appeals a decision of the district court granting summary judgment in favor of defendant Digital Equipment Corporation (DEC). Plaintiff's amended complaint alleged tortious interference with contractual and business relationships and unfair competition. For the following reasons, we affirm the decision of the district court.
 
 I.
 
 2
 Plaintiff MBA is a corporation that provides consulting services and sells computer hardware and software. Defendant DEC designs, manufactures and sells computer hardware and software. Plaintiff filed this action after it submitted a proposal to the Jess Howard Electric Company (JHE) to perform certain computer-related subcontracting work on a project for the City of Columbus Division of Water (DOW) and was not awarded the contract.
 
 
 3
 In 1982, the DOW created a master plan for the distribution and automation of the City's water system. The plan was designed to use the same computer-related hardware and software throughout the system. DOW selected Valmet Automation (Valmet) to perform work on the automation project, and thus Valmet was required for subsequent projects. In 1988, DOW sought bids for the Hap Cremean Water Plant (Morse Road Water Plant). Section 17 of the project specifications required use of a "single firm for Division 17 work." It also required a "standard system, manufactured by Valmet-Sentrol Systems, Ltd."
 
 
 4
 JHE was the successful bidder for the Morse Road Water Plant project. JHE's major supplier list, which it included with the bid, identified Valmet as the supplier of the computer hardware and software on the project. JHE's list did not include MBA as a supplier. After JHE received the bid, it began negotiating with Valmet for the Section 17 subcontract. JHE entered into a letter of intent with Valmet on March 30, 1989. JHE and Valmet entered into a contract on June 30, 1989.
 
 
 5
 During the spring of 1989, MBA tried to convince the DOW to allow JHE to use it as the Section 17 subcontractor instead of Valmet. DOW insisted, however, that Valmet was the only permissible supplier and did not consider MBA as a possible candidate. In mid-June 1989, after JHE had entered into a letter of intent with Valmet, Paul Washburn, an employee of the DOW, spoke on the telephone with John Rankin, an employee of DEC. During their conversation, Mr. Rankin provided a list of local people who had worked with MBA. Mr. Rankin also voiced concern about MBA's adherence to DEC policies regarding proper channels for acquisition of hardware and software and for the licensing of software.
 
 
 6
 Despite his belief that only Valmet would be permitted to work on the Morse Road Water Plant project, Mr. Washburn spoke with several people about MBA. The information he received was incorporated into an internal DOW memorandum dated June 22, 1989. The memorandum stated in part:
 
 
 7
 In MBA's letter of 6-6-89 to Director Long, they suggested we refer to their clients for information on their capabilities. An investigation into their dealings and reputation has not been favorable. Based upon information from several sources it is my belief that if MBA is permitted work under section 17 of the MRWP Automation Contract they will attempt to:
 
 
 8
 1. Supply used DEC hardware.
 
 
 9
 2. Supply Non-DEC controllers for peripherals.
 
 
 10
 3. Supply unlicensed software.
 
 
 11
 The contract documents clearly state that Valmet will be the supplier for Section 17, thus clauses to prevent the above items were not included. However, if MBA is the supplier the way is clear for them to provide all three undesirable items.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 Furthermore, I believe allowing anyone except Valmet to be the sole provider of Section 17 work is in violation of the contract and would require cancellation of the contract.
 
 II.
 
 15
 MBA's amended complaint contained two counts: (1) tortious interference and (2) unfair competition. MBA's tortious interference count alleged that as a result of DEC's misrepresentations, JHE declined to enter into the computer subcontract with MBA. MBA claimed that this constituted tortious interference with its prospective business relationship with JHE. The district court granted defendant's motion for summary judgment on this count. It found that MBA failed to present a nexus between the actions of Mr. Rankin, DEC's employee, and MBA's failure to become a subcontractor on the Morse Road Water Plant project. The court also found that MBA failed to rebut Mr. Rankin's contention that the information he provided to Mr. Washburn was truthful and honest. The court stated that all of the competent evidence indicated that the DOW would not permit MBA to perform the subcontract work for business reasons that were not related to DEC. The district court also granted defendant's motion for summary judgment on the unfair competition claim. The court concluded that DEC's conduct was not the proximate cause of any damage to MBA. Additionally, the court found that DEC was never in competition with MBA for the project. Therefore, MBA's claim that DEC engaged in unfair competition could not succeed.
 
 
 16
 MBA argues on appeal that a genuine issue of material fact exists regarding whether DEC tortiously interfered with its contractual and advantageous business relationships with JHE. MBA contends that the district court's decision granting summary judgment in favor of the defendant was erroneous. According to MBA, it would have been employed to perform work on the Morse Road Water Plant project were it not for DEC's false allegations. MBA claims that the very existence of Paul Washburn's June 22, 1989, memorandum creates an issue of material fact. According to MBA, the only logical inference which can be drawn from this memorandum is that MBA was removed from the project as a result of "unfounded concerns." MBA also argues that the Section 17 bid specifications did not require any particular entity to perform the work. MBA claims that DEC confused the term "supplier" with the term "subcontractor." MBA further argues that Mr. Rankin tortiously interfered with MBA's advantageous business relationship with JHE. MBA points to what it describes as the contradictory recollections of Mr. Rankin and Mr. Washburn with respect to their June 1989 telephone conversation.
 
 III.
 
 17
 This court reviews a district court's grant of summary judgment de novo. Wolotsky v. Huhn, 960 F.2d 1331, 1334 (6th Cir. 1992). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making its determination, this court will view the evidence in the light most favorable to the non-moving party. Wolotsky, 960 F.2d at 1334.
 
 
 18
 The district court's finding that no genuine issue of material fact exists with respect to MBA's claims is correct. The evidence establishes that MBA was never considered a supplier on the Morse Road Water Plant project. The major supplier list JHE included with its bid listed Valmet, not MBA, as a supplier. MBA had no legitimate economic opportunity with respect to the project because Valmet had already been selected to perform the work. Indeed, the conversation between Mr. Washburn and Mr. Rankin which forms the basis of this lawsuit did not even occur until after MBA had been informed by JHE that it would not receive the contract. DEC could not have tortiously interfered with MBA's business relationship because the threshold causation requirement for such a claim was lacking. See Smith v. Ameriflora 1992, Inc., 644 N.E.2d 1038 (Ohio Ct. App.), cert. denied, 642 N.E.2d 635 (Ohio 1994). MBA could not show that the lost economic advantage would have been realized but for DEC's interference. MBA never had a business relationship with the DOW, nor does it claim one. The district court correctly found that competent evidence established that the Morse Road Water Plant project was a single source job and that MBA did not demonstrate that it had a legitimate expectation of being awarded any business on the project, either as a subcontractor of labor or supplier of equipment. For that reason, and because MBA did not establish that any action by DEC resulted in interference with a business relation between MBA and JHE, the district court correctly granted summary judgment on this claim.
 
 
 19
 The district court's conclusion with regard to the unfair competition claim is also correct. It was not DEC's conduct that resulted in MBA's failure to obtain the contract on the project. All of the relevant evidence indicates that MBA did not obtain the contract because the contract had already been awarded to Valmet.
 
 
 20
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation