85 F.3d 628
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charlyn E. CORNETT, Plaintiff-Appellant,
v.
MASON VOLUNTEER FIRE COMPANY; Mason Volunteer Fire Company
Advisory Board; James Spaeth; Kenneth Case; Donald
Walker; John Shreve; Debby Carter; George Spaeth;
Raymond Fath; Mason Volunteer Fire Company Board of
Trustees; Russell Creager; Philip Berner; John Rowland;
Dennis Bells; Max Hall; Charles Unterbrink; Pamela
Eickenhorst; Jeffrey Hetzer; Gary Arnold; Timothy Stone;
and Perry Denehy, Defendants-Appellees.
 No. 95-3010.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1996.
 
 Before MARTIN and MOORE, Circuit Judges, and JOINER, District Judge.*
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Charlyn E. Cornett appeals the district court's order granting the defendants' motion for summary judgment on her procedural and substantive due process claims under 42 U.S.C. § 1983. We affirm because the plaintiff failed to establish that the defendants were state actors.
 
 
 2
 * In September 1992, Fire Chief William E. Ennis suspended Charlyn E. Cornett from her job as Assistant Chief for Emergency Medical Services at Mason Volunteer Fire Company ("Mason"), a private, non-profit Ohio corporation under contract to provide firefighting and emergency medical services to Deerfield Township, Ohio ("Deerfield"). Cornett maintains that Mason's Advisory Board coerced Ennis into ordering her suspension and that the suspension was therefore a violation of her federal procedural and substantive due process rights. She accordingly sued Mason, its Board of Trustees and all its members, and the Advisory Board and all its members under 42 U.S.C. § 1983.[1] The district court granted the defendants' motion for summary judgment, holding that Mason and the other defendants were not state actors. This appeal followed.
 
 II
 
 3
 We review grants of summary judgment de novo, viewing all facts and inferences drawn therefrom in the light most favorable to the appellant. Reversal is warranted if the appellant can demonstrate the existence of a genuine issue of material fact. City Management Corp. v. U.S. Chem. Co., 43 F.3d 244, 250 (6th Cir.1994).
 
 III
 
 4
 Cornett argues that she was denied due process of law, in violation of the Fourteenth Amendment. The strictures of due process, however, bind state actors only, and section 1983 likewise applies only to actions occurring under color of law. See U.S. Const. Amend. XIV, § 1; 42 U.S.C. § 1983; see also Georgia v. McCollum, 505 U.S. 42, 53 n. 9 (1992) (noting that standards for determining state action for Fourteenth Amendment purposes and color of law for section 1983 purposes are identical). The threshold issue, therefore, is whether the conduct of which Cornett complains constitutes state action.
 
 
 5
 The Supreme Court has used many different standards in determining what constitutes state action, depending on the circumstances of each case. In cases involving entities that, like Mason, provide services to the general public, this court has identified three relevant tests: (1) the "public function" test, (2) the "state compulsion" test, and (3) the "nexus" test. See, e.g., Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir.1995); Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir.1992). We will address each of these tests in turn.
 
 
 6
 * "The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." Wolotsky, 960 F.2d at 1335 (citations omitted). Both the Supreme Court and this circuit have rejected many attempts to broaden the range of powers to which this definition applies. See, e.g., San Francisco Arts & Athletics v. U.S. Olympic Committee, 483 U.S. 522, 544-45 (1987) (regulation of Olympic sports teams); Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (education of maladjusted high school students); Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 161 (1978) (settlement of disputes between debtors and creditors); Ellison, 48 F.3d at 196 (involuntary commitment of the mentally ill); Wolotsky, 960 F.2d at 1335 (mental health services); Newsom v. Vanderbilt Univ., 653 F.2d 1100, 1114 (6th Cir.1981) (hospital services for the poor). As the Supreme Court noted in Flagg Brothers, "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " 436 U.S. at 158. In applying the public function test, we engage in a state-specific inquiry as to whether the power at issue has historically been reserved to the state. See, e.g., Ellison, 48 F.3d at 196 & n. 2.
 
 
 7
 The Ohio legislature has given Deerfield the freedom to employ firefighting and emergency medical service personnel itself, to contract with a private agency to do so, or to forego provision of such services altogether. See Ohio Rev.Code §§ 9.60(B)-(C), 505.37(A), 505.44(B); 1994 Op. Ohio Att'y Gen. 2-331, 2-332; 1987 Op. Ohio Att'y Gen. 2-265, 2-266; 1979 Op. Ohio Att'y Gen. 2-134, 2-139 to -140; see also Ohio Rev.Code §§ 505.38(A)-(B) (applying civil servant procedural protections only to firefighters directly employed by township); 1980 Op.Ohio Att'y Gen. 2-297, 2-298 (same). The existence of such a choice indicates that such services are not exclusive to the State of Ohio and its public subdivisions. Newsom, 653 F.2d at 1114 (finding no public function argument where government had never exclusively reserved power). Firefighting and emergency medical services are therefore not "powers which are traditionally exclusively reserved to the state" of Ohio, and Mason and the other appellants are not state actors under the public function test.
 
 B
 
 8
 "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." Wolotsky, 960 F.2d at 1335. When viewed in the light most favorable to Cornett, the evidence indicates that the Advisory Board forced Ennis to make an employment decision to which he was personally opposed. Therefore, to the extent that the Advisory Board's decision was coerced by the government, Cornett's suspension was the result of the exercise of state power.
 
 
 9
 The Deerfield government definitely had some involvement with the Advisory Board. According to Mason's by-laws, one of the Advisory Board's seven members had to be a Deerfield trustee. In addition, Mason's trustees selected all the members of the Advisory Board from a list jointly submitted by the Deerfield trustees and Mason trustees, and the Advisory Board members selected therefrom had to be acceptable to both groups. This court has indicated that the presence of government officials on a private institution's board of trustees is "an important factor in establishing state action." See Crowder v. Conlan, 740 F.2d 447, 451 (6th Cir.1984).
 
 
 10
 Nevertheless, Cornett has established no genuine issue of fact material to the claim that her discipline was the result of state coercion. First, there is no direct evidence that Deerfield influenced or had any reason to influence the Advisory Board's recommendation. The fact that Deerfield's trustees participate in the selection of Advisory Board members every few years is therefore of little consequence. See Crowder, 740 F.2d at 452 (looking to whether state officials attempted to "influence a particular result" rather than to sheer number of public officials on hospital's board of trustees). Second, the presence of a single Deerfield trustee on the Advisory Board is insufficient to invest all the Advisory Board's actions with public authority. See id. at 451-52 (holding that hospital's decision regarding staff privileges was not state action where thirteen-member board of trustees had two public officials on it and relied on others' medical judgments in making the contested decision); cf. Adams v. Vandemark, 855 F.2d 312, 317 (6th Cir.1988) (holding that there was no state action under "nexus" test when one-third of private agency's board of directors was composed of public officials and where board had adopted personnel policy under which plaintiff was allegedly unconstitutionally discharged), cert. denied, 488 U.S. 1042 (1989).
 
 
 11
 If Cornett had any evidence that Deerfield used what little influence it had to coerce Ennis's decision, then her claim might survive summary judgment. Unfortunately for her, she has produced no support for such a theory. The "state compulsion" test is therefore unavailing.
 
 C
 
 12
 Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. Merely because a business is subject to state regulation does not by itself convert its action into state action. Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983.
 
 
 13
 Wolotsky, 960 F.2d at 1335 (citations omitted). Cornett identifies three main factors that she deems relevant to this inquiry: (1) Mason's lease and use of government property for a nominal fee, (2) the contractual requirement that Mason have an annual audit and submit the results to Deerfield, and (3) the fact that Mason derives all its revenues from local property taxes. Given the absence of evidence that public involvement with Mason had anything to do with the actual decision at issue, none of these factors establishes a sufficient nexus.
 
 
 14
 A private entity's lease and use of public property, even for a nominal fee, does not convert its conduct into state action. Id. at 1336; Adams, 855 F.2d at 316. Nor does a requirement that a private entity submit audits to the government. Wolotsky, 960 F.2d at 1333; see also San Francisco Arts & Athletics, 483 U.S. at 543-44 & n. 24 (holding that Olympic Committee was not public actor even though it had to make annual report to Congress). Finally, Mason does depend on public entities alone for its revenues, but the same can be said of many government contractors, and that fact alone does not clothe Mason with public authority. See Rendell-Baker, 457 U.S. at 841 ("Acts of ... private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts."). The means by which the township chooses to raise the money necessary to fulfill its contractual obligations is therefore irrelevant.
 
 
 15
 Moreover, even if the combination of these factors evidences a degree of government involvement in Mason's affairs, Cornett has produced no evidence that this involvement had anything to do with her suspension. The focus of the nexus test is the relationship between the state and the allegedly unconstitutional conduct. Wolotsky, 960 F.2d at 1335. Cornett has not established a genuine issue of fact material to any connection between Deerfield's influence and Ennis's decision to discipline her. Under the nexus test, therefore, Mason and the other appellees are not state actors.
 
 D
 
 16
 It has been said that a mechanical application of our three-part test may render a court "unable to see the forest for the trees." Adams, 855 F.2d at 319 (Merritt, J., dissenting). We are mindful that an examination of isolated aspects of governmental involvement in a private entity's affairs may overlook the overall nature of the relationship, and we therefore consider it appropriate to determine whether the interactions between Deerfield and the appellees cumulatively signify state action. It is clear that they do not. Mason is much less comprehensively involved with the government than a great number of entities that the courts have found to be private. See, e.g., Rendell-Baker, 457 U.S. at 832-33 (holding that private school that depended almost entirely on state funds contingent on compliance with extensive state regulations was not state actor). Even under this expanded inquiry, therefore, Cornett's suspension was not a state action.
 
 
 17
 Because none of the appellees is a state actor, we need not address the merits of Cornett's substantive and procedural due process claims. The decision of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Cornett's complaint also included allegations of sex discrimination and a claim under the Ohio Constitution, but she has not appealed the district court's disposition of those issues, and so we consider them waived. See Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (holding that issues not "fully developed and argued" on appeal are waived)