Douglas E. **DURSO,** Plaintiff,

v.

**KENTUCKY ASSOCIATION OF COUNTIES, INC., et al.,** Defendants.

No. Civ.A. 97–85.

United States District Court, E.D. Kentucky.

Jan. 22, 1999.

Eugene F. Mooney, James M. Mooney, Mooney, Mooney & Mooney, Lexington, KY, for Plaintiff.

Michael Judy, David J. Guarnieri, Johnson, Judy, True & Guarnieri, Frankfort, KY, Joseph U. Meyer, Covington, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Defendants, Kentucky Association of Counties ("KACO"), KACO's self-insured unemployment compensation fund ("UI Fund"), and board members of KACO and UI, have moved the Court [Record No. 8] for summary judgment. Plaintiff, Douglas Durso ("Durso"), has responded [Record No. 12], to

which defendants have replied [Record No. 13]. This matter is now ripe for decision.

The following are the pertinent facts. KACO is a nonprofit corporation formed in 1974, and it only allows Kentucky counties and their elected officials to become voting members. Although KACO's board of directors consists of thirty-five elected county officials, their service on the board is separate from their duties as elected officials.[1]

Along with other things, KACO sponsors the UI Fund; the UI Fund is an unincorporated association. KACO and the UI Fund are separate and distinct entities. In fact, the UI Fund does not receive any funding from KACO, and KACO's board members do not have any control over the UI Fund.[2]

On July 15, 1980, Durso began his employment with the UI Fund. In 1984, the UI Fund contracted with Kentucky Related Insurance Services, Inc. ("KRISI") to serve as the UI Fund's third-party administrator. At that time, Durso became a KRISI employee and remained as such until KRISI's contract was terminated by the UI Fund board in December of 1994.

As the UI Fund's third-party administrator, KRISI, via Durso, reported quarterly to KACO and the UI Fund. While performing his duties, Durso learned of some improper and illegal practices relating to the UI Fund and informed the Chairman of the UI Fund about them.

In June of 1997, KACO began administering the UI Fund and eventually terminated Durso. Durso has filed a three-count complaint alleging the following: (1) defendants retaliated against him for exercising his First Amendment rights in violation of 42 U.S.C. § 1983; (2) defendants retaliated against him for reporting suspected violations of Kentucky law in violation of KRS 61.102, the Kentucky Whistleblower Act; and (3) plaintiff was wrongfully terminated in violation of the terms of his employment.

■■■ To set forth a viable claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of rights secured by the Constitution or laws of the United States by a person acting under the color of state law. *See Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). In order to determine whether a private party's actions constitute "state action," the Court must decide whether said actions may be "fairly attributable to the state." *Id.* at 1335. Three tests are used by courts to decide whether the conduct in question is fairly attributable to the state: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *See Collyer v. Darling,* 98 F.3d 211, 232 (6th Cir.1996).

In *Collyer,* the Sixth Circuit described the above tests:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. Finally, under the symbiotic relationship test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.

*Id.* at 232 (internal citations and quotes omitted).

■■■ First, under the public function test, the defendants must exercise powers "which are traditionally exclusively reserved to the state." *Collyer,* 98 F.3d at 232. In the case at bar, defendants consist of a nonprofit corporation, KACO, an unincorporated association, the UI Fund, and these entities' board members. The defendants acted as insurers and third-party administrators for employee benefit programs provided by local county governments for matters such as unemployment insurance, workers' compensation, and medical benefit payments.[3]

---

1. The board members do not serve by virtue of being elected by their constituents; instead, they choose to serve on the board.

2. The UI Fund has its own budget and board.

3. In the instant case, a private corporation administered the defendants' UI programs from 1984 until 1995. Plaintiff's reliance on *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), is misplaced because the act of providing medical assistance to incarcerated prisoners

■ Providing these employee benefit services, however, is not a power traditionally reserved to the state. For instance, with respect to workers' compensation benefits, Kentucky law gives employers the authority to be self-insured. Private insurance companies provide coverage to employers not electing to self-insure themselves with respect to workers' compensation benefits and employee medical benefits. Hence, administering such programs is a function commonly delegated to private third-party administrators, as opposed to one traditionally exclusively reserved to the state.[4]

■ Next, the Court will address the state compulsion test. This test requires that a state exercise such coercive power or provide such significant encouragement that the choice of the private actor is deemed to be that of the state. *Id.* at 232. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible" for the private party's conduct. *Wolotsky*, 960 F.2d at 1335.

■ In the case at bar, Durso is challenging the defendants' decision to terminate him. The state, however, does not regulate or control the defendants, and the state did not choose the defendants' board members or develop their policies. Because there is no evidence that the state encouraged or played a role in the defendants' decision to terminate Durso, the state compulsion test has not been met.[5]

■ The final test to be addressed is the symbiotic relationship test. Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as

that of the state itself." *Collyer*, 98 F.3d at 232 (internal quotes omitted).

In *Adams v. Vandemark*, 855 F.2d 312 (6th Cir.1988), a plaintiff sued alleging that he had been discharged in retaliation for exercising his First Amendment rights. The defendants were a Michigan nonprofit corporation and its executive director; they administered federal, state, and local funds for various social programs established by state law. One-third of its board of directors were composed of state officials pursuant to state law and its business was conducted in a building owned by the state and leased to the corporation under a favorable arrangement in which defendants only had to pay one dollar per year to keep the lease. *Id.* at 315–16.

In *Adams*, plaintiff alleged four links between defendants and the state: (1) public funding, (2) government regulation, (3) public facilities, and (4) public officials on the board of directors. *Id.* at 316. Despite the connection between defendants and the state, the Sixth Circuit held that the symbiotic test was not met, and defendants' actions could not be attributed to the state. The *Adams* Court found that even though defendants are almost entirely funded by public sources and are subject to regulation, this, without more, is not enough to attribute the entity's decision to discharge to the state. In essence, a plaintiff must establish that the state's regulation or funding of the private party compelled or influenced its decision to discharge him. *Id.* at 315, 317.

■ In the instant case, there is simply no causal connection between the state and defendants' decision to discharge Durso. In fact, the defendants in *Adams* had a much

---

has traditionally and exclusively been reserved to the state. On the other hand, providing unemployment benefits is not a matter which is traditionally reserved to the state; instead, it is an obligation that both private and public employers share.

4. Contrary to Durso's assertions, the Kentucky Attorney General office's rulings do not conclude that KACO and its affiliates are "public agencies." These rulings merely hold that KACO and its agencies are subject to the Kentucky Open Records Act; however, they have no effect on whether KACO and the UI Fund are state actors

with respect to personnel decisions. Moreover, the section of the Kentucky Open Records Act which subjects KACO and the UI Fund to its provisions is one that does not apply state agencies, but rather entities which receive 25% of their funding from the state.

5. Durso claims that defendants retaliated against him because he criticized and reported the mismanagement of the fund. Durso does not allege that defendants violated his constitutional rights by the manner in which they paid unemployment benefits.

stronger connection to the state than the defendants at bar had with the state of Kentucky. Because there is no basis for finding that the state of Kentucky compelled or even influenced defendants' decision to discharge Durso, the symbiotic test has not been met.

The defendants attempt to distinguish *Adams* by pointing out that the whole board in the case at hand is made up of public officials whereas only one-third of the board was made up of public officials in the *Adams* case. This distinction, however, is undercut by the fact that in *Adams*, state law required that one-third of the board be made up of state officials, and thus, the officials were serving in their official capacities.[6] *Id.* at 317; *see Crowder v. Conlan,* 740 F.2d 447, 451 (6th Cir.1984) (noting that the Mayor of Hopkinsville and Judge Executive of Christian County serve on the board by virtue of holding those specific offices). In KACO's case, however, the board members, albeit public officials, served in their individual capacities as they voluntarily joined KACO's board. In other words, there was no state law requiring them to serve or join KACO's board in order to fulfill their official responsibilities.[7] Additionally, unlike in *Adams*, the instant defendants are not regulated by the state, and they do not operate in public facilities.

In summary, the Court finds that defendants' decision to terminate plaintiff was made in the course of its day-to-day functioning, and the decision was not influenced or dictated by the state in any way. Hence, because Durso's termination cannot be attributed to the state, his § 1983 claim is dismissed. Lastly, because Durso's only federal claim is dismissed, the Court declines to exercise supplemental jurisdiction over his state claims. *See* 28 U.S.C. § 1367(c)(3).[8] Accordingly,

**IT IS ORDERED:**

(1) That defendants' motion for summary judgment [Record No. 8] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART;**

(2) That plaintiff's § 1983 claim be, and the same hereby is, **DISMISSED WITH PREJUDICE;**

(3) That plaintiff's state law claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE;**

(4) That plaintiff's motion to amend scheduling order be, and the same hereby is, **DENIED AS MOOT.**

---

6. Contrary to Durso's assertions, neither KRS 341.277 or KRS 341.281 addresses KACO or its affiliated agencies. These statutes permit both private and public organizations to become "reimbursing employers." Under the authority of these statutes, several counties have chosen to act as reimbursing employers for the purpose of providing their employees unemployment benefits with KACO.

7. Public officials who serve on board of directors because they are required by state law to do so as part of their jobs are obviously different in char-

acter than public officials who choose to voluntarily participate in their individual capacity.

8. The Court notes that Kentucky's Whistleblower Act specifically states that venue should be in state circuit court. *See* KRS 61.103(2). Because Kentucky has waived its sovereign immunity under the Act, its determination as to where it may be sued should be strictly enforced. Thus, even if plaintiff's § 1983 claim had merit, the Court would not have exercised jurisdiction over this claim; the Sixth Circuit has yet to address this specific issue.