87 F.3d 1322
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William SHOEMAKER, Plaintiff-Appellant,
v.
ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION;
Residency Review Committee for Emergency Medicine;
David Wagner; Glenna L. Case; John C.
Gienapp, Defendants-Appellees.
 No. 95-55200.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 6, 1996.
Decided June 19, 1996.
 
 1
 Before: BRUNETTI and RYMER, Circuit Judges, and TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Dr. William Shoemaker appeals the district court's dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), of his complaint alleging violations of 42 U.S.C. §§ 1983, 1985(3), and 1986 and seeking declaratory relief under 28 U.S.C. § 2201, against the Accreditation Council for Graduate Medical Education (ACGME), its Residency Review Committee for Emergency Medicine (RRC), and several of its members.[1] We have jurisdiction, 28 U.S.C. § 1291, and affirm.
 
 
 4
 * Shoemaker argues that he adequately alleged state action by ACGME since it imposed a "preferred" standard which usurped the authority of the Director of Health Services of the County of Los Angeles to appoint and remove department chairs. As the "preferred" standard is discriminatory in disqualifying older, qualified physicians from serving as chair simply because no emergency medicine residencies existed when they were in training, imposing such a standard kept the County from exercising its responsibility to enforce the laws against discrimination. Shoemaker also claims to be the victim of a conspiracy which necessarily involved state action, and submits that private parties who act in concert with the state are acting under color of law for purposes of § 1983.
 
 
 5
 The latter point is undoubtedly correct, however Shoemaker's conclusory allegations of conspiracy and concert of action do not suffice to convert ACGME's otherwise private accreditation action into state action. Generally, a state's response to a private party's actions does not convert the private party's conduct into state action. Blum v. Yaretsky, 457 U.S. 991 (1982); National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179 (1988). Tarkanian is closely on point, and controls.
 
 
 6
 Like the NCAA in Tarkanian, ACGME sets its own rules and standards, without state involvement; like UNLV, the County and the Medical Center's conduct was influenced by the proposed withdrawal of accreditation but nothing in the complaint suggests that it was any entity other than the Medical Center that removed Shoemaker as Chair. Just as UNLV retained the authority to withdraw from the NCAA and establish its own standards, Shoemaker does not suggest that the County and the Medical Center lacked either that authority or the right to appeal ACGME's accreditation decision. No more than the NCAA is it alleged that ACGME had power to terminate Shoemaker or shut down the hospital. In short, there is no basis for concluding that ACGME was acting under color of California law when it promulgated standards governing the practice and teaching of emergency medicine.
 
 
 7
 Nor can we say on the footing of what Shoemaker has alleged that ACGME's accreditation proposal constituted state action because it resulted from a delegation of power by the state, the County or the Medical Center. While the complaint does allege that the state delegated the responsibility for approval of post-graduate training programs to ACGME, so far as the complaint discloses, no government agency delegated power to ACGME to take specific action against Medical Center or University employees. Tarkanian, 488 U.S. at 196. Nor do the allegations indicate that ACGME enjoyed or employed governmental powers such as the power to assert authority over any individual such as Dr. Shoemaker. From all that appears in the complaint, like the NCAA, all that ACGME could do is withdraw accreditation of the program. Although unlike the coach, the complaint alleges that Drew wanted to get rid of Shoemaker (because he was old and white), that fact alone does not distinguish Tarkanian enough to make ACGME's standards state standards. As was the case there too, ACGME's recommendations as a whole are intended to bring the Medical Center's program into compliance with the Essentials of Accredited Residencies and include a number of reasons for the proposed withdrawal of accreditation in addition to deficiencies in leadership of the emergency department. Id. at 197 n. 18.
 
 
 8
 St. Agnes Hospital of the City of Baltimore v. Riddick, 668 F.Supp. 478 (D.Md.1987), upon which Shoemaker relies, is not persuasive because, among other things, it was decided before Tarkanian. See St. Agnes Hospital of the City of Baltimore v. Riddick, 748 F.Supp. 319, 326 (D.Md.1990) ("this Court finds that the Supreme Court's conclusion in Tarkanian does put into doubt this Court's 1987 finding of state action on the part of ACGME" and "[c]omparable cases ... indicate that the ACGME's actions in this case do not amount to the requisite state action."). And Assum v. Good Samaritan Hospital, 542 F.2d 792 (9th Cir.1976), is distinguishable for in that case, the (private) hospital acted at the behest of the Oregon Board of Medical Examiners, a state actor unlike ACGME, which is a private actor.
 
 II
 
 9
 Shoemaker contends that the district court should not have dismissed his § 1985(3) claim since he has alleged that the defendants conspired to deprive him of federally protected rights "based upon Plaintiff's race (Caucasian), color (white), ancestry (European-American), and age (70)." The problem, however, is that § 1985(3) is not a source of substantive rights. Rather, "the rights ... [it] vindicates must be found elsewhere"; therefore, a plaintiff must also establish that the substantive right at issue is one protected against private, not just governmental, encroachment. United B'hood of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 833 (1983). Accord Bray v. Alexandria Clinic, 506 U.S. 263 (1993).
 
 
 10
 Shoemaker has neither alleged "intent to deprive persons of a right guaranteed against private impairment," Bray, 122 L.Ed.2d at 49, nor explained how the class of which he claims to be a member warrants the special protection of § 1985(3). Sever v. Alaska Pulp Corp., 978 F.2d 1529 (9th Cir.1992). As he puts it: "Plaintiff was a member of a protected class: 70-year-old Caucasians with a six-year contract to serve as Chief discriminated against because of their age and race." Regardless of protections that might be available as against Shoemaker's employer on account of these allegations, we see no way they state a constitutional claim against ACGME.
 
 
 11
 Both Adarand Constructors, Inc. v. Pena, 115 S.Ct. 2097 (1995), and Maynard v. City of San Jose, 37 F.3d 1396 (9th Cir.1994), are state actor cases which do not support Shoemaker's claim against ACGME. United B'Hood, 463 U.S. at 831. Maynard, in addition, involved a specific statutory protection afforded to whites who are denied association with members of other groups because of an employer's discriminatory practices, § 706 of Title VII, 42 U.S.C. § 2000e5, which is not the case here. Accordingly, the district court did not err in dismissing Shoemaker's § 1985(3) claim.
 
 III
 
 12
 Because Shoemaker's § 1986 claim depends on the § 1985(3) claim, McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir.1990), cert. denied, 504 U.S. 957 (1992), the district court properly dismissed that claim as well.
 
 IV
 
 13
 By the same token, Shoemaker's claim for declaratory relief under 28 U.S.C. § 2201 falls with his other constitutional claims. Hoeck v. City of Portland, 57 F.3d 781, 787 (9th Cir.1995), cert. denied, 116 S.Ct. 910 (1996). Although he additionally relies on allegations (and seeks a declaration) that RRC and ACGME act contrary to their own Rules in conditioning accreditation upon Shoemaker's, rather than the Director of the Residency Program's qualifications, and that conditioning accreditation on Shoemaker's removal was arbitrary and capricious, he has averred no relationship between ACGME and himself that gives him standing to complain of these rules or their application to Drew. Thus, since the district court properly dismissed Shoemaker's underlying constitutional claims, it also properly dismissed his claim for declaratory relief.
 
 V
 
 14
 Although in the normal event the district court would have granted leave to amend, here it didn't do so because Shoemaker only casually suggested in his opposing Memorandum of Points and Authorities that "if any cause of action is dismissed, such dismissal should be with leave to amend." He neither suggested to the district court (or us) how his complaint could be amended, nor lodged a proposed amended complaint, see Local Rule 3.8.1. After judgment was entered, Shoemaker did not seek relief or leave to amend under Fed.R.Civ.P. 59 or 60. Under these circumstances, we cannot say that the district court abused its discretion in entering judgment without first permitting Shoemaker leave to amend.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable Jack E. Tanner, Senior United States District Judge, Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 His complaint named David Wagner, president of the RRC, Glenna L. Case, executive secretary of the RRC, and John C. Gienapp, president of the ACGME. We refer to them collectively as "ACGME." Shoemaker also filed an action in state court against the County of Los Angeles and the Department of Health Services challenging his removal and claiming a violation of his due process rights