Trena KELLY, Plaintiff,

v.

FOREST HILLS LOCAL SCHOOL DIS-
TRICT BOARD OF EDUCATION,
et al., Defendants.

No. C–1–97–360.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 14, 1998.

Henry Louis Sirkin, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, Steven D. Shafron, Brooke F. Kocab, Berkman Gordon Murray & Devan, Cleveland, OH, for Trena Kelly.

Carolyn Ann Taggart, Richard T. Lauer, Rendigs Fry Kiely & Dennis, Cincinnati, OH, Joseph Kelly Wehby, McCaslin, Imbus & McCaslin, Cincinnati, OH, for Forest Hills Local School Dist. Bd. of Educ. and Patricia Hubbard.

Carolyn Ann Taggart, Richard T. Lauer, Rendigs Fry Kiely & Dennis, Cincinnati, OH, Joseph Kelly Wehby, McCaslin, Imbus & McCaslin, Cincinnati, OH, Michael D. Fitzpatrick, Cincinnati, OH, for Paul Hamilton.

Mark Alan VanderLaan, Dinsmore & Shohl, Cincinnati, OH, for Archdiocese of Cincinnati and Edward J. Kessler.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO CERTAIN CLAIMS, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV AND V OF HER COMPLAINT AS TO CERTAIN CLAIMS, AND DISMISSING WITHOUT PREJUDICE ALL REMAINING CLAIMS FOR LACK OF JURISDICTION**

DLOTT, District Judge.

This matter is before the Court on the Motion for Summary Judgment of Defendants The Archdiocese of Cincinnati and Brother Edward Kesler (doc. # 16), the Motion for Summary Judgment of Defendants Forest Hills Local School District Board of Education, Paul Hamilton, and Patricia Hubbard (doc. # 17), and Plaintiff's Motion for Summary Judgment on Counts IV and V of Her Complaint (doc. # 20). For the reasons more fully stated below, the Motion for Summary Judgment of Defendants The Archdiocese of Cincinnati and Brother Edward Kesler is hereby **GRANTED** as to Plaintiff's claim of retaliation. The Motion for Summary Judgment of Defendants Forest Hills Local School District Board of Education, Paul Hamilton, and Patricia Hubbard is hereby **GRANTED** as to Plaintiff's claims of retaliation and violations of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution. Plaintiff's Motion for Summary Judgment on Counts IV and V of Her Complaint is hereby **DENIED** as to Plaintiff's claims of violations of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution. Plaintiff's claims of tortious interference with contract and alleged violations of Ohio Revised Code § 3317.06(A) and Article VI, Section 2 of the Ohio Constitution are hereby **DISMISSED** for lack of jurisdiction without prejudice to refile in state court.

## I. BACKGROUND

This action arises out of the nonrenewal of Plaintiff Trena Kelly's employment contract with the Forest Hills Local School District ("the District") by Defendant Board of Education ("the Board"). Plaintiff was employed by the District as an auxiliary services clerk from the 1993–1994 school year until the conclusion of the 1995–1996 school year. In this position, she assisted in administering the District's auxiliary services program, which lent textbooks to students of Immaculate Heart of Mary School ("IHM"), a Catholic school operated by Defendant The Archdiocese of Cincinnati ("the Archdiocese"). Plaintiff performed her duties in this position at IHM, where Defendant Brother Edward Kesler was principal during the 1995–96 school year. Defendant Paul Hamilton was Plaintiff's supervisor during her first two years of employment and Defendant Patricia

Hubbard became her supervisor sometime during her last year of employment. Specifically, Plaintiff alleges in this action that: Kesler, Hamilton, Hubbard, and the Board retaliated against her for objecting to performing sectarian work as a public employee in violation of the United States and Ohio Constitutions; Kesler tortiously interfered with Plaintiff's contractual relationship with the Board; the Board's practice of maintaining a textbook lending program without an auxiliary services clerk since Plaintiff's contract was not renewed violates the Ohio Revised Code and the United States and Ohio Constitutions; and, last, the Board's ratification of or acquiescence to IHM personnel performing duties in the administration of the auxiliary services program constitutes an establishment of religion by this public entity in violation of the United States and Ohio Constitutions.

Ohio Rev.Code § 3317.06 provides for auxiliary services programs, which allow public funds to pay for services for students attending nonpublic schools, including loaning secular textbooks purchased by public school boards of education to those students. Under this statute, the non-public schools decide how to allocate the funds for auxiliary services among various permissible uses. The Ohio law provides that, in addition to the use of state funds to purchase textbooks to lend to nonpublic students, funds are available "to hire clerical personnel to administer such lending program." Ohio Rev.Code § 3317.06(A). Plaintiff was hired by the Board to work as an auxiliary services clerk under this statute. During her employ, Plaintiff maintained an office at IHM and had daily contact with the principal of IHM. However, at all times, she remained an employee of the Board and either Hubbard or Hamilton was her official supervisor.

Defendant Kesler became principal of IHM in May, 1995. The next month, Plaintiff alleges that Kesler asked her to process orders of materials to be purchased by IHM, rather than orders of solely auxiliary services materials to be purchased with public funds. Plaintiff claims that she objected to this request on the basis that, as a public employee, she was not allowed to perform essentially sectarian duties. Plaintiff further alleges that Kesler ignored this objection and told her to complete the task by the end of the month. According to Plaintiff, throughout the 1995–1996 school year, Kesler continually requested that Plaintiff perform duties to benefit IHM beyond the scope of the auxiliary services program, including calculating the costs of and ordering non-auxiliary service textbooks. Each time this occurred, Plaintiff claims to have objected to Kesler that she should not perform such tasks before ultimately completing them.

Plaintiff alleges that in June 1995, shortly after Plaintiff first objected to doing work on behalf of IHM beyond the scope of the auxiliary services program, Kesler met with Hamilton and discussed Plaintiff's employment. Plaintiff claims that Kesler's notes from that meeting state that Kesler was "not interested in having her on a continuing contract."

Hamilton and Kesler met again in January of 1996 with Hubbard, who was Plaintiff's supervisor by that time. According to Plaintiff, Hubbard's notes from that meeting state that IHM was "not interested in seeing [Plaintiff's] contract renewed." Below that was written:

evaluation—not needed for support staff before renewal of con [sic]

inefficiency

improve climate

In Kesler's notes from this same meeting, it is alleged that he wrote and then crossed out "no [sic] renewal will be based on:" and below these words wrote "inefficiency" and "negative moral [sic]."

In February of 1996, Kesler wrote a letter to Plaintiff informing her that, pursuant to the discretion allowed to nonpublic schools in determining the uses of funds for auxiliary services programs, the clerk position that she then held would be reduced from 37 hours over 5 days to 16 hours over 4 days during the 1996–1997 school year. The next month, however, Kesler wrote a letter to Hamilton informing him that a decision had been made not to fund the position of auxiliary services clerk at all after the 1995–1996 school year. Kesler asked that Hamilton wait until April, 1996 to apprise Plaintiff of this decision and

requested that he be involved in informing her.

On April 1, 1996, Plaintiff met with Kesler, Hamilton, and Hubbard in Kesler's office at IHM, at which time Plaintiff was told that a recommendation would be made to the Board that her employment contract not be renewed for the 1996–1997 school year. Upon hearing this, Plaintiff claims that she told the three Defendants that this recommendation was in retaliation for her objections to performing work beyond the scope of the auxiliary services program. Plaintiff claims that neither Hamilton nor Hubbard inquired as to what she meant by this accusation.

Three weeks later, the Board voted not to renew Plaintiff's employment contract. Plaintiff asserts that from the time that her contract was not renewed, the District has continued to operate a textbook lending program pursuant to Ohio Rev.Code § 3317.06(A) without an auxiliary services clerk. Plaintiff claims that the duties that she once performed as auxiliary services clerk have been assumed by employees of IHM.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

### A. Retaliation

■ Plaintiff first alleges that Kesler, Hamilton, and Hubbard unconstitutionally retaliated against her by recommending that the Board not renew her employment contract after she objected to performing what she considered to be sectarian duties and that the Board retaliated against her by not renewing that contract.[1] Hamilton and Hub-

---

1. In Counts I and II of her Complaint, Plaintiff alleges that Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution. However, based upon Plaintiff's own description and argument in support of these causes of action against Kesler, Hamilton, Hubbard, and the Board in her Response to Defendants' Motions for Summary Judgment, these claims can only be characterized as retaliation for the exercise of free speech, which should be alleged as violating the 1st and 14th Amendments to the United States Constitution. Such a claim may also lie under Article I, Section 11 of the Ohio Constitution, but Plaintiff herself in her Response to Defendants' Motions, only addresses these claims as arising under 42 U.S.C. § 1983 and the United States Constitution. Therefore, the Court analyzes these claims as Plaintiff has addressed them to the Court in her Response—as allegedly unconstitutional retaliation for the exercise of free speech.

If she indeed seeks to prove under Counts I or II a violation of the Free Exercise Clause or Establishment Clause of the First Amendment to the United States Constitution or a violation of Article I, Section 7 of the Ohio Constitution, Plaintiff has not addressed the legal elements or alleged any facts related specifically to the nonrenewal of her contract sufficient to preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (nonmoving party may not rest upon allegations in pleading, but must set forth specific facts in support of party's claims in order to avoid summary judgment). In addition, if Plaintiff did intend in her unartfully drafted Complaint to assert in Count II a cause of action against the Board for violation of the Establishment Clause in not retaining an auxiliary services clerk, this cause of action is duplicative of

bard acted pursuant to their roles as employees of the Board and therefore may be considered public officials for the purpose of analyzing this alleged constitutional violation. Plaintiff insists that Kesler, though a private individual, may be held liable under 42 U.S.C. § 1983 as well because he acted under color of state law as a willful participant in joint activity with state agents in order to deprive Plaintiff of her constitutional rights.

■ "The principal inquiry in determining whether a private party's actions constitute state action under the Fourteenth Amendment is whether the party's actions may be fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992) (citations and quotes omitted). Three tests exist to determine whether a private party's conduct may be attributable to the state and therefore actionable under 42 U.S.C. § 1983. *Id.* "The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections." *Id.* "The state compulsion test requires that a state exercise such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id.* Plaintiff has not produced any evidence that would preclude summary judgment under either of these tests. Plaintiff's claim against Brother Kesler is best addressed under the symbiotic relationship or nexus test.

Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the [private party] so that the action of the latter may be treated as that of the state itself." *Id.* Plaintiff appears to claim that because the Board delegated to the principal of IHM the authority to select the auxiliary services clerk, and because Kesler had the discretion to set the number of hours that the auxiliary services clerk would be employed and oversaw much of Plaintiff's work, a sufficiently close nexus exists through which his actions in deciding not to have her return for the 1996–97 school year may be fairly attributed to the state. The Court disagrees.

Plaintiff was at all times relevant to this action an employee of the District. She was under contract as a public school employee that could only be renewed or not be renewed by the Board. Hamilton and Hubbard, also employees of the District, served as Plaintiff's supervisors. While Plaintiff contends that many of their supervisory duties were either implicitly delegated to Kesler by Hamilton or Hubbard or assumed by Kesler, the fact is that Hamilton and Hubbard remained her supervisors and their reliance upon Kesler for evaluations of her performance do not make his actions fairly attributable to the state. *Cf. NCAA v. Tarkanian*, 488 U.S. 179, 195–196, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (state institution's acceptance of private entity's recommendations regarding employment of state employee does not render private entity a state actor). This analysis is not affected by the fact that IHM students were lent textbooks by the District or by the fact that they received services under the District's auxiliary services program. *See Wolotsky*, 960 F.2d at 1336 (receipt of government funding does not convert actions of private entity or actor into those of the state). Accordingly, Plaintiff may not pursue her cause of action for retaliation against Kesler.

■ Defendants Hamilton and Hubbard, however, are public employees whose acts are fairly attributable to the state. Their assertion of statutory immunity under Ohio law must fail because this protection does not extend to claims such as Plaintiff's where a federal constitutional violation is alleged. *See* Ohio Rev.Code § 2744.09(E). These Defendants also assert the defense of qualified immunity in response to Plaintiff's retaliation claim. However, qualified immunity is not available if a public official's alleged conduct violates a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is clearly established that a public official cannot retaliate against an individual for exercising his or her First Amendment rights. *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir.1997). Therefore, Hamilton and

Counts IV and V and will be addressed in Section B. of this Order.

Hubbard are not insulated from liability by qualified immunity and Plaintiff's retaliation claim against them must be addressed on its merits.

 In order to prove unconstitutional retaliation for the exercise of free speech, Plaintiff must show that her speech was constitutionally protected and that the protected speech was a substantial or motivating factor in her termination. *Mount Healthy City Sch. Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If Plaintiff were to satisfy this burden, Defendants then must prove by a preponderance of the evidence that the same action would have been taken absent the protected speech. *Id.*

 Whether speech is constitutionally protected is a question of law. *Id.* Speech by a public employee is protected when it addresses a matter of public concern and the employee's interest in making such statements outweighs the interest of the government in promoting the efficiency of the public service it performs through its employees. *Langford v. Lane*, 921 F.2d 677, 681–682 (6th Cir.1991). A matter of public concern is "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The Court finds that Plaintiff's allegedly voiced concerns that she, as a public employee, should not have to perform essentially sectarian duties implicates constitutional issues that are of public concern. Plaintiff's alleged objections more closely resemble a citizen's speaking out on a matter of public decision making than an employee's complaints regarding a supervisor's actions or her own responsibilities and are therefore constitutionally protected. *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir.1988).

However, Plaintiff is unable to produce evidence to preclude summary judgment on the matter of causation; no reasonable jury could find based upon the evidence before the Court that retaliation for the exercise of free speech was a substantial or motivating factor in Hamilton's and Hubbard's recommendation to the Board not to renew Plaintiff's contract. While Plaintiff is able to show that Hamilton and Hubbard met with Kesler to discuss Plaintiff's employment, she puts forth no evidence that unconstitutional motivations were discussed or any evidence that would reasonably allow that inference. In fact, Plaintiff puts forth no evidence that she spoke with Hamilton and Hubbard regarding her objections to Kesler's requests or that they had any knowledge whatsoever of those objections until after she was informed of their decision to recommend to the Board that her contract not be renewed. Since Plaintiff is unable to raise an issue of material fact with regard to a necessary element, specifically whether retaliation was a substantial or motivating factor in Hamilton's and Hubbard's decision, Defendants Hamilton and Hubbard are entitled to summary judgment on this claim.

Similarly, Plaintiff has not put forth any evidence whatsoever that the Board's decision to accept the recommendation of Hamilton and Hubbard to not renew Plaintiff's contract was substantially motivated by unconstitutional retaliation. There is absolutely no evidence that any individual member of the Board acted upon an impermissible motive. *See Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 515 (6th Cir.1991) (school board is not liable under § 1983 unless plaintiff could prove existence of impermissible motivation by members of the board). Therefore, the Board is also entitled to summary judgment on Plaintiff's claim of retaliation.

## B. Establishment Clause

Plaintiff also claims that the Board's administration of a textbook lending program without an auxiliary services clerk and its ratification of or acquiescence to performance of duties previously performed by Plaintiff as the auxiliary services clerk by employees of IHM constitute an establishment of religion by this public body in violation of the United States and Ohio Constitutions.[2] In addition

2. Specifically, Plaintiff alleges that the Board's failure to employ an auxiliary services clerk and

its apparent delegation of the clerk's duties to employees of IHM violate the First and Four-

to disputing the merits of these claims, the Board challenges Plaintiff's standing to bring such an action.

Plaintiff appears to allege that she has standing to challenge the administration of the textbook lending program without an auxiliary services clerk and the performance of duties related to the administration of that program by employees of IHM both on the basis of her status as a taxpayer to the State of Ohio and the fact that she was injured by the abolition of the clerk's position since she previously held the job. In order to show standing on the basis of her status as a taxpayer, a two part test must be satisfied. *Flast v. Cohen*, 392 U.S. 83, 102–103, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). "First the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, s. 8, of the Constitution ... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power." *Id.* This test may be applied to determine the standing of Plaintiff, as a state taxpayer, in her constitutional challenge to the appropriation of state funds by the state legislature for and the administration of a textbook lending program without a clerk. *See, e.g., Americans United for Separation of Church and State v. School District of the City of Grand Rapids*, 546 F.Supp. 1071, 1075 (W.D.Mich.1982).

Plaintiff can establish a nexus between her status as an Ohio taxpayer and the exercise of state legislative spending power. The Ohio Legislature clearly makes appropriations of state funds for auxiliary services programs, satisfying the first part of the test. *See* Ohio Rev.Code § 3317.024(P) (providing that funds shall be appropriated to each school district for the implementation of an auxiliary services program). Plaintiff also satisfies the second part of the test in that she alleges that the challenged funding exceeds constitutional limits beyond limits on the Legislature's spending power, namely the Establishment Clause of the First Amendment to the United States Constitution. Accordingly, Plaintiff has standing as an Ohio taxpayer to bring this action under the Establishment Clause. *See Americans United for Separation of Church and State*, 546 F.Supp. at 1075 (finding standing for individual taxpayer to challenge school district's administration of state funded cooperative programs between public and nonpublic schools), *aff'd* 718 F.2d 1389, 1390–1391 (6th Cir.1983) ("We agree with [the District Court's] reasoning and result on [standing]."), *aff'd School District of the City of Grand Rapids v. Ball*, 473 U.S. 373, 380 n. 5, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985). *See also Hawley v. City of Cleveland*, 773 F.2d 736, 742 (6th Cir.1985) (standing for suits by nonfederal taxpayers to enjoin unconstitutional acts affecting public finances is generally supported). Therefore, the Court finds it unnecessary to address Plaintiff's claim of standing as a result of alleged injuries arising from the abolition of the position of auxiliary services clerk.

As for the merits of the claim, Plaintiff alleges that the Board has violated the

teenth Amendments of the United States Constitution and Article I, Section 7 and Article VI, Section 2 of the Ohio Constitution. "The Ohio Supreme Court has noted that the decisions of the United States Supreme Court can be utilized to give meaning to the guarantees found in Article I of the Ohio Constitution." *South Ridge Baptist Church v. Industrial Commission of Ohio*, 676 F.Supp. 799, 808 (S.D.Ohio 1987), *aff'd*, 911 F.2d 1203 (6th Cir.1990), *cert. denied*, 498 U.S. 1047, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991). "The Ohio courts have given no indication that they would apply Article I of the Ohio Constitution more stringently than the United States Su-

preme Court has applied the First Amendment." *Id.* Therefore, the Court's analysis of Plaintiff's claim under Article I, Section 7 of the Ohio Constitution is identical to its analysis of the federal claim, addressed in this Section of this Order.

Plaintiff suggests that the protections of Article VI, Section 2 of the Ohio Constitution extend beyond those provided by the United States Constitution and has cited Ohio case law in support of that proposition. Plaintiff's claim under this state constitutional provision is addressed in Section C. of this Order.

Establishment Clause in two ways: by administering a textbook lending program without an auxiliary services clerk and through the Board's ratification of or acquiescence to the performance of duties by IHM employees that were previously performed by an auxiliary services clerk. The Board's operation of an auxiliary services program in this manner pursuant to state statute does not violate the Establishment Clause if this practice has a secular purpose, its principal or primary effect neither advances nor inhibits religion, and it does not foster an excessive entanglement with religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Kunselman v. Western Reserve Local School District,* 70 F.3d 931, 932 (6th Cir.1995). Specifically, plaintiff claims that the Board's failure to employ an auxiliary services clerk to administer the program has the effect of advancing religion and the Board's alleged acquiescence to religious school employees' performance of duties once performed by an auxiliary services clerk fosters an excessive entanglement of the government with religion.

■ According to Plaintiff's Motion for Summary Judgment, failure to employ a clerk has the effect of advancing religion because IHM may use more "state funds, rather than its own, to purchase educational materials" and thus may "reallocate its resources to further the interest of the religious school" since state funds available for use under the textbook lending program are no longer used to pay a clerk's salary. This argument that private funds not expended by IHM for secular purposes, due to the increase in public funds available, may then be used for religious purposes fails to show that the principal or primary effect of the Board's administration of the textbook lending program without a clerk is one of advancing religion. A challenged governmental practice cannot have the purpose or effect of endorsing religion. *Hawley v. City of Cleveland,* 24 F.3d 814, 822 (6th Cir.1994). However, "not every law that confers an 'indirect,' 'remote' or 'incidental' benefit upon [religion] is, for that reason alone, constitutionally invalid." *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 37 L.Ed.2d

948 (1973). The funds that are not spent upon the salary of a clerk and thus may be used by IHM for other secular purposes under the program do not create such a substantial benefit to IHM that the primary effect is to advance religion. *See School District of the City of Grand Rapids,* 473 U.S. at 397, 105 S.Ct. 3216 (programs found to be unconstitutional where they were so pervasive that they "in effect subsidize the religious functions of the parochial schools by taking over their responsibility for teaching secular subjects" and thereby have the primary effect of advancing religion). *See also Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (found earlier version of Ohio Rev.Code § 3317.06(A) constitutional which was identical in all respects to today's provision for a textbook lending program except that it did not provide for hiring an auxiliary services clerk to administer the program).

Plaintiff also contends that the Board's alleged ratification of or acquiescence to the assumption by IHM employees of duties involved in the administration of the textbook lending program such as the duty to inventory books creates an excessive entanglement between the government and religion. However, the Supreme Court found constitutional an earlier version of Ohio Rev.Code § 3317.06(A) that was identical to today's version in all respects except that it did not even provide for the hiring of clerical personnel to administer such a lending program. *Id.* In *Wolman,* the Supreme Court did not specifically address what duties nonpublic school employees could perform in the administration of Ohio's textbook lending program. The Court did, however, liken the program to programs in other states in which it had previously considered the constitutionality of nonpublic school employees performing duties in the administration of textbook lending programs. *Id.* at 237–238, 97 S.Ct. 2593 ("This system for the loan of textbooks to individual students bears a striking resemblance to systems approved in *Board of Education v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) and in *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975)."). In those cases, the

Court considered an administrative scenario, similar to that which is alleged to exist in the case at bar, where nonpublic student requests for the books were filed initially with the nonpublic school and the nonpublic school authorities prepared collective summaries of these requests which they then forwarded to the public school. *See Allen,* 392 U.S. at 244 n. 6, 88 S.Ct. 1923; *Meek,* 421 U.S. at 360, 95 S.Ct. 1753. While specifically considered in the context of whether textbook lending programs have a primary effect of advancing religion, this arrangement involving nonpublic school employees performing duties necessary to the administration of a textbook lending program was nonetheless found to be "in conformity with the Constitution." *Allen,* 392 U.S. at 244 n. 6, 88 S.Ct. 1923.

Based upon these holdings, the Court finds as a matter of law that the situation in the case at bar does not foster excessive entanglement of the government with religion. Therefore, the Board is entitled to summary judgment on Plaintiff's claim under the Establishment Clause and Article I, Section 7 of the Ohio Constitution.

## C. Tortious Interference and Alleged Violations of Ohio Law and the Ohio Constitution

■ Plaintiff's remaining claims allege that: Kesler tortiously interfered with Plaintiff's right to contract with the Board; the Board's maintenance of a textbook lending program without an auxiliary services clerk violates the Ohio statute providing for auxiliary services programs. Ohio Rev.Code § 3317.06 and Article VI, Section 2 of the Ohio Constitution: and the Board's delegation of the duties of an auxiliary services clerk to employees of IHM violates Article VI, Section 2 of the Ohio Constitution. These claims are exclusively based upon state law.

■ The Court has discretion to decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of

plaintiff's right."). The Court has considered the interests of judicial economy and the avoidance of multiplicity of litigation in this case, balancing those interests against needlessly deciding state law issues. *See Landefeld v. Marion General Hospital,* 994 F.2d 1178, 1182 (6th Cir.1993). The Court sees no undue amount of wasted or duplicative effort that will result from Plaintiff having to refile her claims in state court. *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 802 (6th Cir. 1996). "Discovery has been completed in this case, and there is no reason to think that any additional discovery will be necessary should she refile her state claims in state court." *Id.*

Therefore, the Court finds that no substantial savings in judicial resources would be gained that outweigh the interests in avoiding the unnecessary resolution of state law issues. This is especially true with regard to Plaintiff's claims that the Board's actions violate the Ohio statute providing for auxiliary services programs and Article VI, Section 2 of the Ohio Constitution. Both of these claims present novel questions of state law as to the requirements of and what is permissible under each that are better resolved within in the Ohio state court system. *See Landefeld,* 994 F.2d at 1182 (refusal to exercise supplemental jurisdiction where novel questions of state law were presented was proper); *Nationwide Mutual Insurance Company v. Cisneros,* 52 F.3d 1351, 1364 (6th Cir. 1995) (same). Accordingly, the Court will dismiss these state law claims without prejudice for Plaintiff to refile in state court.

## IV. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment of Defendants The Archdiocese of Cincinnati and Brother Edward Kesler is hereby **GRANTED** as to Plaintiff's claim of retaliation and the Motion for Summary Judgment of Defendants Forest Hills Local School District Board of Education. Paul Hamilton, and Patricia Hubbard is hereby **GRANTED** as to Plaintiff's claims of retaliation and violations of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution.

For the reasons stated above, Plaintiff's Motion for Summary Judgment on Counts IV and V of Her Complaint is hereby **DENIED** as to Plaintiff's claims of violations of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Ohio Constitution.

For the reasons stated above, Plaintiff's claims of tortious interference with contract and alleged violations of Ohio Rev.Code § 3317.06(A) and Article VI, Section 2 of the Ohio Constitution are hereby **DISMISSED** for lack of jurisdiction without prejudice to refile in state court.

**IT IS SO ORDERED.**