Carla M. SISKANINETZ, Plaintiff,

v.

WRIGHT STATE UNIVERSITY,
et al., Defendants.

No. C–3–99–625.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 12, 2001.

Joanne Ervin, Dayton, OH, for Plaintiff.

Terence Fague, Jeanie Elmlinger, Coolidge Wall Wonsley & Lombard, Dayton, OH, for Defendants.

Deborah Lydon, Dinsmore & Shohl, Cincinnati, OH, for Carolyn Van Dyne.

DECISION SUSTAINING MOTION FOR SUMMARY JUDGMENT (DOC. # 20) FILED BY DEFENDANT CAROLYN VAN DYNE; THIS DECISION IS NOT A FINAL, APPEALABLE ORDER

RICE, Chief Judge.

This litigation stems from the dismissal of Plaintiff Carla M. Siskaninetz from the Wright State University College of Nursing and Health, where she had been enrolled as a student. Following her dismissal, Siskaninetz filed a four-count Complaint, alleging violations of Chapter 4112 of the Ohio Revised Code (Count I), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count II), the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (Count III), and 42 U.S.C. § 1983 (Count IV). Named as Defendants are: (1) Wright State University; (2) faculty member Brenda Stevenson; (3) faculty member Celesta L. Warner; (4) College of Nursing and Health Associate Dean Barbara S. O'Brien; (5) College of Nursing and Health Dean Patricia A. Martin; and (6) Carolyn Van Dyne, who allegedly was an agent of Wright State University while serving as Siskaninetz's preceptor. (Complaint, Doc. # 1).

Pending before the Court is a Motion for Summary Judgment (Doc. # 20), filed by Defendant Van Dyne. She seeks summary judgment on Siskaninetz's claim under 42 U.S.C. § 1983 (Count IV), which is the only claim asserted against her.[1] In support of her Motion, Van Dyne raises two arguments. *First,* she contends that she did not act "under color of state law" as Siskaninetz's preceptor. *Second,* she asserts that she did not deprive Siskaninetz of any right, privilege or immunity secured

---

1. Counts I–III of Siskaninetz's Complaint are directed toward only Wright State University. Count IV is directed toward Wright State University and the individual Defendants, including Van Dyne.

by the United States Constitution. (Doc. # 20 at 9, 12). For the reasons set forth, *infra,* the Court agrees that Van Dyne did not act "under color of state law," as is required to face liability under § 1983.[2] Accordingly, the Court will sustain Van Dyne's Motion for Summary Judgment.

## I. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the

---

**2.** In light of this conclusion, the Court's analysis herein will not address Van Dyne's second argument.

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Factual Background* [3]

Carla Siskaninetz is profoundly hard of hearing. As a result, she reads lips and wears a hearing aid in each ear. (Siskaninetz Affidavit, attached to Doc. # 29 at Exh. A, ¶ 3–4). Without the hearing aids, she cannot hear spoken words. With them, however, she can comprehend most spoken words, particularly if the speaker is facing her and background noise is low. (*Id.* at ¶ 5–6). Siskaninetz attended the Wright State University College of Nursing and Health in the 1990s. Although she completed most of her classes without problems, she twice received a failing grade in a course identified as Nursing 423. (*Id.* at ¶ 7). As a result, she was dismissed from the nursing program in 1996. (*Id.* at ¶ 8). She reapplied for admission in January, 1998, in order to com-

---

**3.** For purposes of ruling on Van Dyne's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to Siskaninetz, who is the non-moving party. In its substantive analysis, *infra,* the Court will recite additional pertinent facts, again construing those facts and all reasonable inferences most strongly in favor of Siskaninetz.

In opposition to Van Dyne's Motion for Summary Judgment, Siskaninetz has provided the Court with her own affidavit and a number of other Exhibits. For purposes of its analysis herein, the Court will cite Siskaninetz's affidavit and the other Exhibits only to the extent that they provide a factual context for this litigation and/or are relevant to her § 1983 claim, which is the only claim presently at issue. Insofar as Siskaninetz alleges facts that are relevant only to her other three claims, the Court need not discuss them at this time.

plete the few remaining courses required for her to receive a degree in nursing. (*Id.* at ¶ 9). Siskaninetz was readmitted to the nursing program later that year. (*Id.* at ¶ 10). After taking two refresher courses, she enrolled in Nursing 423 and passed the course with a "B" grade. (*Id.* at ¶ 11–12). In order to graduate in December, 1998, Siskaninetz needed to pass only two other courses: (1) Nursing 408, a one-credit course in professional nursing; and (2) Nursing 424, a seven-credit synthesis practicum in nursing. (*Id.* at ¶ 13). She enrolled in both courses in the Fall Quarter, 1998. (*Id.*). Defendant Stevenson served as her instructor in Nursing 424. (*Id.*).

In connection with her seven-credit practicum or "clinical" experience, Siskaninetz was assigned to work at Franciscan Medical Center ("Franciscan"). (*Id.* at ¶ 14). Prior to the start of her practicum, she attended an orientation session conducted by Stevenson and an unidentified Franciscan representative. (*Id.*). During that session, Stevenson identified certain procedures that Siskaninetz and the other students were not allowed to perform. These included administering chemotherapy, removing a CVA pump, drawing blood from a CVA pump, extubating a patient, removing a tracheotomy tube, removing a balloon pump, reading parameters on a balloon pump, operating a PCA pump, and working with tuberculosis patients. (*Id.*).

Prior to the start of her practicum, Siskaninetz was not told that the performance of surgery automatically cancels pre-surgery orders written by a physician. (*Id.* at ¶ 16). Defendant Van Dyne also never informed her about such a rule. (*Id.*). Siskaninetz discovered this rule only after providing a patient with post-operative medication based on a pre-operative order. (*Id.*). When she committed this mistake, Defendant Stevenson told her that she "should have known not to do that." (*Id.*).

Siskaninetz began her Nursing 424 practicum on September 20, 1998, and Van Dyne, an employee of Franciscan, served as her preceptor. (*Id.* at 17). Until October 23, 1998, she received "no negative feedback whatsoever" from Van Dyne. On that date, however, Stevenson told Siskaninetz that Van Dyne was unhappy with her performance. (*Id.*). During the last week of her practicum, Siskaninetz was assigned to a patient who had a PCA pump. (*Id.* at ¶ 20). Based on what she had been told during orientation, she sought the assistance of a non-student nurse (Van Dyne or someone else) whenever her work required contact with the pump. (*Id.*). At the end of the quarter, she received a negative evaluation from Stevenson, who criticized her for seeking help with the PCA pump. (*Id.*). Thereafter, Siskaninetz met with Stevenson, who informed her that she had failed the clinical component of Nursing 424. (*Id.* at ¶ 21). Stevenson also gave her a final evaluation, which contained inaccurate or "distort[ed]" information. (*Id.*). In January, 1999, Siskaninetz received a letter, informing her that she was ineligible to continue as a nursing student. (*Id.* at 24).

During Siskaninetz's Nursing 424 practicum, no one from the College of Nursing and Health ever observed her working as a student nurse. (*Id.* at ¶ 18). The only people who observed her were Van Dyne and two other Franciscan nurses, who substituted as her preceptor when Van Dyne was absent. (*Id.*). However, Stevenson did visit Van Dyne and Siskaninetz four or five times at Franciscan. On her visits, Stevenson never spent more than fifteen minutes with Van Dyne and Siskaninetz together, and never more than fifteen minutes alone with Siskaninetz. (*Id.* at ¶ 19).

### III. *Analysis*

A key issue in this case is whether Van Dyne was acting "under color of state law"

when she served as Siskaninetz's preceptor. As noted, *supra*, Siskaninetz's only claim against Van Dyne arises under 42 U.S.C. § 1983, which provides a federal cause of action to vindicate the deprivation of a plaintiff's constitutional rights by someone acting "under color of state law." Consequently, if Van Dyne was not acting under color of state law as Siskaninetz's preceptor, then she is entitled to summary judgment on the § 1983 claim against her.

In order for a private party to be acting "under color of state law," "its actions [must] so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir.2000). The Sixth Circuit applies three tests to determine whether a private party has acted under color of state law, for purposes of § 1983: (1) the "public function" test; (2) the "state compulsion" test; and (3) the "symbiotic relationship/nexus" test. *Id.*

Under the "public function" test, the actions of a private individual are fairly attributable to the state if the private party "exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992) (citations omitted). In the present case, Van Dyne's actions as a preceptor do not constitute an exclusively "public function," and Siskaninetz does not argue to the contrary.

Under the "state compulsion" test, the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id.* In the present case, the evidence does not suggest that anyone associated with Wright State University (or its College of Nursing and Health) exercised any coercive power over Van Dyne, rendering her actions as preceptor fairly attributable to the state. Once again, Siskaninetz makes no argument to the contrary.

Finally, under the "symbiotic relationship/nexus" test, the actions of a private party constitute state action when there is a sufficiently close nexus between the state and the challenged action of a private party, such that the actions of the private party may be fairly attributable to the state. Although this test requires a fact-specific analysis, the Sixth Circuit has made clear that the ties between the private party and the state must be substantial. State regulation and the receipt of public funds will not convert private conduct into state action. *See, e.g., Lansing*, 202 F.3d at 830. Additionally, in *Sandoval v. Bluegrass Regional Mental Health–Mental Retardation Board*, 229 F.3d 1153, 2000 WL 1257040 (6th Cir. July 11, 2000) (unpublished), the Court held that a private mental health center, which served as the administrator of statutorily mandated state assistance programs, was not a state actor under the "symbiotic relationship/nexus" test.

In the present case, Siskaninetz argues that Wright State University and Stevenson, her adjunct assistant professor for Nursing 424, were both state actors (i.e., acting under color of state law).[4] She also insists that Van Dyne, an employee of Franciscan (a private hospital), was a state actor when serving as her preceptor. In support, Siskaninetz notes that Wright State University and Franciscan had a "contractual relationship," governing the

---

4. With respect to Wright State University, Siskaninetz is unquestionably correct. "A state university without question is a state actor." *NCAA v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). For present purposes, the Court also will assume, arguendo, that an adjunct assistant professor at a state university is a state actor.

practicums in which she and other nursing students participated. Siskaninetz stresses language in the contract, recognizing that "it is to the mutual benefit of the parties" that nursing students "use the facilities of [Franciscan] for clinical learning experiences."[5] (Doc. # 29 at 15–16 and Exh. F). She also emphasizes the following contract language:

This agreement is entered into with a spirit of mutual cooperation for the benefit of both parties, with the full realization that this agreement encompasses long range planning and joint efforts to assure meaningful learning experiences for the students and the highest quality of health care for the clients.

(*Id.*).

Finally, Siskaninetz argues that Van Dyne "entangled" herself with Wright State University, so that her actions as a preceptor are attributable to the state, in several ways. *First,* she contends that Wright State University benefitted from having its students gain clinical experience, and Van Dyne (as well as Franciscan) benefitted from the unpaid services of the students. *Second,* she contends that Van Dyne's entanglement with Wright State University was long-term, as she had served as a preceptor for seven years. *Third,* Siskaninetz contends that Wright State University delegated its responsibility for observation and evaluation of its students to Van Dyne, who, alone, evaluated their performance in practicums. *Fourth,* Siskaninetz contends that Van Dyne functions as a *de facto* Wright State University faculty member. In particular, she reasons that Van Dyne evaluated her performance and passed that information on to Stevenson, who merely performed the ministerial task of assigning a grade based on information supplied by Van

Dyne. *Finally,* she restates her earlier arguments, insisting that "even though Stevenson completed a written evaluation of [her] performance in Nursing 424 and assigned a failing grade, Stevenson did so based solely on information provided by Van Dyne." Indeed, Siskaninetz stresses that "[w]ithout Van Dyne, there would have been no information upon which to base any grade in the clinical part of Nursing 424." (Doc. # 29 at 17–20).

Upon review, the Court concludes, as a matter of law, that Van Dyne *was not* acting "under color of state law," when she served as Siskaninetz's preceptor. Despite the Plaintiff's arguments to the contrary, the evidence does not reveal a genuine issue of material fact. As a threshold matter, the Court notes that this case presents an atypical state action issue. In the usual case, "a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Tarkanian,* 488 U.S. at 192, 109 S.Ct. 454. In the present case, however, the decisive act that allegedly deprived Siskaninetz of her constitutional rights was taken by Wright State University, when it dismissed her from the College of Nursing and Health. The Court harbors no doubt that Wright State University acted under color of state law, within the meaning of § 1983, when it dismissed Siskaninetz. With regard to Van Dyne, however, the relevant inquiry *is not* whether Wright State University was excessively involved in Van Dyne's activities, thereby rendering her otherwise private conduct state action. Rather, the critical question is whether the University's decision to dismiss Siskaninetz, a decision influenced by Van Dyne's

---

**5.** Siskaninetz also notes that the contract "explicitly prohibits discrimination against nursing students on the basis of handicap...." (Doc. # 29 at 16). Although this assertion is true, it has no bearing on whether Van Dyne was acting "under color of state law."

evaluation, converted her conduct into state action. When confronting this atypical state action issue, the Court must "proceed cautiously in applying the nexus test, adhering to the rule that a mere relationship between the state and [a] private [party] is insufficient to impose liability on the private [party]." *Austin v. Diaz*, 194 F.3d 1311, 1999 WL 970313 (6th Cir. Oct.13, 1999) (unreported).

Having reviewed the evidence and pertinent case law, the Court concludes that any reliance by Wright State University and/or Stevenson on Van Dyne's evaluation of Siskaninetz did not transform that evaluation into state action for purposes of § 1983. In *Tarkanian*, the Supreme Court reviewed a somewhat similar scenario. Therein, the Court held that the National Collegiate Athletic Association ("NCAA") did not act under color of state law by making a recommendation which caused the University of Nevada Las Vegas ("UNLV") to suspend Jerry Tarkanian, its basketball coach. As in the present case, Tarkanian argued that the NCAA, a private entity, had exercised power delegated to it by UNLV, a state actor, when it recommended his suspension. As a result, he reasoned that the NCAA was a state actor. Upon review, the Court recognized that it is possible for a state to "delegate authority to a private party and thereby make that party a state actor." *Tarkanian*, 488 U.S. at 195, 109 S.Ct. 454. In finding that the NCAA did not act under color of state law, however, the Court noted that "UNLV delegated no power to the NCAA to take specific action against any university employee." *Id.* at 195–96, 109 S.Ct. 454. Indeed, the Court recognized that "the NCAA did not—indeed, could not—directly discipline Tarkanian or any other state university employee." *Id.* at 197, 109 S.Ct. 454. As the Supreme Court noted, UNLV was not compelled to accept, or to act upon, the NCAA's suspension recommendation. *Id.* at 198, 109 S.Ct. 454.

Similarly, in the present case, Wright State University was not compelled to accept Van Dyne's evaluation of Siskaninetz or to discharge her from its nursing program based on that evaluation. Van Dyne, a preceptor at a private hospital, simply provided the University with information, which it was free to use as it desired. The fact that the University elected to act on that information, and to dismiss Siskaninetz, does not transform Van Dyne into a state actor for purposes of § 1983. *See, e.g., Shoemaker v. Accreditation Council for Graduate Med. Educ.*, 87 F.3d 1322, 1996 WL 341935 (9th Cir. June 19, 1996) (unpublished) (recognizing that "[g]enerally, a state's response to a private party's actions does not convert the private party's conduct into state action"); *Vickery v. Jones*, 100 F.3d 1334 (7th Cir.1996) (finding that defendants did not act under color of state law when they merely made hiring recommendations to state officials).

In *Kelly v. Forest Hills Local School Dist. Bd. of Educ.*, 19 F.Supp.2d 797 (S.D.Ohio 1998) (Dlott, J.), the district court reached a similar conclusion. In that case, the plaintiff filed suit, challenging the defendant school board's non-renewal of her employment contract. While employed, the plaintiff had helped to administer the school district's auxiliary services program, which loaned books to a private school. The plaintiff had performed her work at the private school, where defendant Edward Kesler served as its principal. The plaintiff's lawsuit included a § 1983 claim against Kesler, alleging that he had retaliated against her, in violation of the First and Fourteenth Amendments, by recommending that the school board not renew her contract.

Upon review, the district court rejected the plaintiff's argument that Kesler quali-

fied as a state actor under the "symbiotic relationship/nexus" test, reasoning as follows:

> Plaintiff appears to claim that because the Board delegated to the principal of [the school] the authority to select the auxiliary services clerk, and because Kesler had the discretion to set the number of hours that the auxiliary services clerk would be employed and oversaw much of Plaintiff's work, a sufficiently close nexus exists through which his actions in deciding not to have her return for the 1996–97 school year may be fairly attributed to the state. The Court disagrees.

> Plaintiff was at all times relevant to this action an employee of the District. She was under contract as a public school employee that could only be renewed or not be renewed by the Board. Hamilton and Hubbard, also employees of the District, served as Plaintiff's supervisors. While Plaintiff contends that many of their supervisory duties were either implicitly delegated to Kesler by Hamilton or Hubbard or assumed by Kesler, the fact is that Hamilton and Hubbard remained her supervisors and their reliance upon Kesler for evaluations of her performance do not make his actions fairly attributable to the state. Cf. *NCAA v. Tarkanian,* 488 U.S. 179, 195–196, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988) (state institution's acceptance of private entity's recommendations regarding employment of state employee does not render private entity a state actor). This analysis is not affected by the fact that [the school's] students were lent textbooks by the District or by the fact that they received services under the District's auxiliary services program. See *Wolotsky,* 960 F.2d at 1336 (receipt of government funding does not convert actions of private entity or actor into those of the state). Accordingly, Plaintiff may not pursue her cause of action for retaliation against Kesler.

*Id.* at 802.

Similarly, in the present case, Siskaninetz argues that Wright State University and Stevenson delegated to Van Dyne the responsibility for evaluating her performance. Even if this assertion is true, however, Stevenson remained her clinical instructor, and Stevenson's reliance upon Van Dyne for evaluations does not make Van Dyne's actions fairly attributable to the state.

Finally, although the Sixth Circuit's ruling in *Sandoval v. Bluegrass Regional Mental Health–Mental Retardation Board,* 229 F.3d 1153, 2000 WL 1257040 (6th Cir. July 11, 2000) (unpublished), is factually distinguishable from the present case, it nevertheless supports the foregoing reasoning. As noted, *supra,* in *Sandoval,* the court held that a private mental health center that actually administered mandatory state assistance programs did not act under color of state law under the "symbiotic relationship/nexus" test. In that case, the Bluegrass center operated under a contract with the State of Kentucky, received significant state funding and served as the administrator of statutorily mandated mental health programs. Despite these facts, the Sixth Circuit held that Bluegrass did not act under color of state law when it allegedly discriminated against a participant in the programs. If Bluegrass was not a state actor, despite the fact that it directly administered required public assistance programs under contract with the state, the Court cannot conceive of Van Dyne qualifying as such in the present case. She was not compensated by Wright State University, she was not personally a party to any contract between the University and Franciscan Medical Center and she merely evaluated Siskaninetz, reporting her observations to

the course instructor, Defendant Stevenson, who actually assigned the failing grade that led to Siskaninetz's dismissal.

IV. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Motion for Summary Judgment (Doc. # 20) filed by Defendant Carolyn Van Dyne is sustained. Given that the Court's ruling herein does not dispose of this litigation, this Decision is not a final, appealable order.