**Kelly PROBST, individually and as Administratrix of the Estate of Christopher Probst, Plaintiff,**

v.

**CENTRAL OHIO YOUTH CENTER, et al, Defendants.**

No. 06–CV–594.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 21, 2007.

Alphonse Adam Gerhardstein, Jennifer Lynn Branch, Gerhardstein Branch & Laufman Co. LPA, Cincinnati, OH, for Plaintiff.

William Charles Curley, Weston, Hurd, Curley, Patterson & Bush, Columbus, OH, Robert Henry Stoffers, Mazanec Raskin & Ryder Co LPA, Cleveland, OH, for Defendants.

## OPINION AND ORDER

ALGENON L. MARBLEY, District Judge.

## I. INTRODUCTION

Kelly Probst ("Plaintiff") filed this wrongful-death action on behalf of the estate of her son, Christopher Probst, who died while he was incarcerated at Defendant Central Ohio Youth Center ("COYC"), a juvenile detention facility. Plaintiff has also named as Defendants Victoria Jordan, a social worker employed by COYC; Emily Giametta, COYC's Superintendent; Consolidated Care, Inc. ("CCI"), a non-profit corporation that performs suicide evaluations for COYC; and Jennifer Plumley, a social worker employed by CCI (collectively, with COYC, "Defendants"). Plaintiff alleges that as a result of Defendants' negligent failure adequately to assess Probst's mental state, Probst committed suicide while under Defendants' care.

This matter is before the Court on CCI's and Plumley's Motion for Summary Judgment, in which they ask this Court to find that CCI is not a state actor under 42 U.S.C. § 1983. For the reasons stated herein, this Court finds that the provision of mental-healthcare services to incarcerated persons in a juvenile facility is a public function, and as a result, CCI and Plumley are state actors. Thus, CCI's and Plumley's Motion for Summary Judgment is **DENIED.**

## II. BACKGROUND

### A. Facts

In early 2004, seventeen-year-old Probst lived with his mother and three-month old daughter while attending high school in Ohio. Probst was the victim of sexual abuse as a child and subsequently developed a drug addiction. He suffered mental-health problems and, in his teenage years, committed several crimes.

In June 2004, Probst violated the conditions of his house arrest. As a result, the Knox County Juvenile Court incarcerated him for ninety days at COYC in Marysville, Ohio. COYC is a juvenile detention facility organized under Ohio Revised Code ("O.R.C.") § 2152.41.

On June 25, 2004, COYC admitted Probst. In the subsequent weeks, Plaintiff alleges that Probst was placed on room confinement due to his erratic behavior. For example, he punched a wall for which he required medical treatment at the emergency room. On July 8, 2004, after allegedly attempting to escape, COYC asked Giametta to do a mental assessment of Probst. Giametta, a licensed social worker, is responsible for providing care to the juvenile inmates at COYC. Plaintiff contends that Probst informed Giametta that he was feeling depressed, anxious, and suicidal. Plaintiff further asserts that Giametta placed Probst on "precautions," which is COYC's version of suicide watch—Probst's clothes were removed and he was given a paper gown to wear.

Later that day, Plaintiff contends that Giametta asked CCI to send a social worker to assess Probst's mental condition. CCI is a private, non-profit corporation that provides mental-healthcare services in Ohio. Pursuant to the terms of a Memorandum of Understanding (the "MOU") between COYC and CCI dated October 19, 2003, CCI provided independent suicide evaluations on an as-needed basis to COYC. When a social worker at COYC felt that an inmate was at risk of hurting himself, the social worker would contact CCI, who would dispatch one of its employees to make an independent evaluation of the inmate. CCI charged $150 per hour for this service. Plumley, one such social worker employed by CCI, testified that she performed assessments at COYC between ten and twenty-five times from approximately

July 2001 to July 2004. Pursuant to its language, the MOU was not "intended to create a joint venture between CCI and COYC." Further, the MOU states that COYC was under no obligation to follow CCI's recommendations. According to Jordan, however, in practice COYC always follows the recommendations of CCI's mental-health professionals.

At approximately 7:00 p.m. on July 8, 2004, Plumley arrived at COYC to evaluate Probst. Prior to her evaluation, COYC allegedly failed to provide Plumley with documentation of Probst's history of mental instability or notes from Giametta's earlier assessment of Probst. Plumley evaluated Probst and advised that he was not suicidal. COYC took him off "precautions." The next morning, Probst hung himself with a bed sheet.

### B. Procedural History

On July 14, 2006, Plaintiff filed her complaint against Defendants in which she asserts three causes of action. In Count I, Plaintiff claims that Defendants violated 42 U.S.C. § 1983 by depriving Probst of his Eighth and Fourteenth Amendment rights. In Counts II and III, Plaintiff asserts state-law tort claims for negligence and wrongful death.

On November 22, 2006, Defendants CCI and Plumley moved for summary judgment on Plaintiff's § 1983 claim and to dismiss Plaintiff's state-law claims for lack of jurisdiction.[1] All responsive pleadings have been filed and the motion is ripe for resolution.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

### IV. ANALYSIS

Section 1983 reads, in relevant part:

---

1. The Court will refer to this motion as "CCI's motion" for convenience.

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

█ To succeed on a claim for a violation of § 1983, the plaintiff must show that: (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *Waters v. City of Morristown,* 242 F.3d 353, 358–59 (6th Cir.2001). CCI only disputes that it acted "under color of state law" with respect to its interaction with COYC.

█ The parties stipulate that COYC, a governmental entity, is a state actor. Further, it is undisputed that CCI is a private corporation. The issue of whether a private corporation is "a state actor" or "acted under color of state law" is a question of law for the Court's determination. *See Neuens v. City of Columbus,* 303 F.3d 667, 670 (6th Cir.2002). In order for a private entity to "act under color of state law" for § 1983 purposes, "its actions [must] so approximate the state action that they may be fairly attributed to the state." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000). The Sixth Circuit employs three tests in order to determine whether a private entity meets this requirement: (1) the state compulsion test; (2) the symbiotic relationship or substantial nexus test; and (3) the public function test; *Id.; Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). Each test will be examined in turn. *Id.*

## A. The State Compulsion Test

█ If the state exercises "such coercive power or provide[s] such significant encouragement, either overt or covert" over a private entity's actions, by law, those actions are ascribed to the state. *Wolotsky,* 960 F.2d at 1335. The state agency must do more than approve the private entity's conduct or course of behavior for the private entity's actions to be attributable to the state. *Id.*

In her response, Plaintiff does not contend that CCI is a state actor under the state compulsion test, nor could she. There is no evidence indicating that COYC exerted any control over CCI's suicide evaluations. CCI conducted individual risk evaluations of COYC inmates on an as-needed basis, utilizing its own standards and procedures without COYC's active participation. Upon completion of these evaluations, CCI communicated its conclusions to COYC along with a list of recommendations. COYC then had discretion to implement those recommendations. In this case, Plumley, per the usual process, conducted an independent evaluation of Probst without COYC's coercion or input. Thus, this Court finds that, under the state compulsion test, CCI is not a state actor.

## B. The Symbiotic Relationship/Substantial Nexus Test

█ A private party's conduct "constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky,* 960 F.2d at 1335. The Sixth Circuit has not established a legal framework for deciding whether a sufficiently close nexus exists; each case must be evaluated on its own facts. *Lansing,* 202 F.3d at 830. That being said, however, Supreme Court and Sixth Circuit precedent have identified several factors which, *in*

*and of themselves,* are insufficient bases for finding the existence of a close nexus.

Extensive state regulation of a private entity does not necessarily create a sufficient nexus between the state and the private entity. *See, e.g., Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Likewise, neither the public funding of a private entity, nor a private entity's use of public land, is enough to establish a symbiotic relationship. *Id.* Additionally, a private entity's use of public services and the presence of public officials on a private company's board do not make the private company's actions attributable to the state. *Lansing,* 202 F.3d at 831. Finally, the fact that a private company performs a public contract does not render it a state actor. *Wolotsky,* 960 F.2d at 1336 ("Acts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts").

In support of her argument that a social worker who provides suicide assessments to a juvenile detainee is a "state actor" under the substantial nexus test, Plaintiff relies on *Nutter v. Clark County Sherif,* No. C–3–01–214, slip op. (S.D.Ohio 2003). In *Nutter,* the court held that the actions of a privately employed social worker who contracted with a state prison to provide suicide assessments "can be fairly attributed to the state under the nexus test . . . . and the public function test." Unlike in the case sub judice, the social worker in *Nutter* provided *all* the mental-health services to the prison, and not just suicide assessments. *Id.* at *13. Read as a whole, *Nutter* only stands for the proposition that the actions of a social worker who worked hand-in-hand on a daily basis with jail staff may be attributed to the state. In this case, CCI's social workers visited COYC infrequently on an as-needed basis. Thus, *Nutter* is factually inapposite.

Further, Plaintiff, relying on *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), argues that because CCI was a "willful participant in joint activity with the State," CCI is a state actor under the substantial nexus test. However, as the Sixth Circuit concluded in *Tahfs v. Proctor,* 316 F.3d 584, 590–91 (6th Cir.2003), just because a private entity and a state actor undertake a joint activity does not mean that the private entity is a state actor under § 1983. Rather, the term "joint actor" is just a legal term employed by courts to refer to a private entity that the court has already concluded is a state actor.

Under the substantial nexus test, it must be shown that "the state is *intimately involved* in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky,* 960 F.2d at 1335 (emphasis added). In her response, Plaintiff acknowledges that although "there may be no evidence of [a symbiotic relationship between CCI and COYC]," this Court should nevertheless find CCI to be a state actor under the substantial nexus test because COYC delegated its constitutional duty to provide mental healthcare to its inmates. COYC did not delegate the provision of all its mental-health services to CCI. Rather, it delegated only a portion of its mental-health services to CCI, namely, suicide assessments. COYC contracted with CCI for the narrow and limited purpose of performing independent evaluations of inmates who might be at risk for suicide. Had COYC outsourced all of its mental-health services to CCI, this Court's conclusion, as to the substantial nexus test, might be different. Performing an occasional suicide evaluation, however, does not entwine CCI in the overall fabric of mental-health services offered at COYC. Further, the MOU states that CCI did not

intend to engage in a joint activity with COYC. By agreement, CCI was an independent contractor that made independent judgments and recommendations which COYC was not obligated to follow. Given CCI's limited involvement in the provision of mental healthcare at COYC, this Court finds that there was not a substantial nexus between CCI and the state.

## C. The Public Function Test

■■■■ Under the public function test, if a "private entity exercises powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain," it is a state actor. *Wolotsky*, 960 F.2d at 1335. Relying almost exclusively on a selected quote from *Wolotsky*, CCI argues that "with regard to this case, providing mental-health services has not been a power which has traditionally been exclusively reserved to the state." *Id.*

*Wolotsky*, however, is not analogous. In *Wolotsky*, the plaintiff social worker brought a § 1983 action against his employer, a private non-profit corporation, for his allegedly discriminatory termination. The Sixth Circuit held that the private corporation was not a state actor under the public function test because the general provision of mental-health services is not a public function and because the specific act in question, plaintiff's termination, was a personnel decision in which the state had no involvement. *Id.*

*Wolotsky*, however, did not address the question of whether the provision of medical care *in prison* is a public function. In fact, in its discussion of *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), the Sixth Circuit in *Wolotsky* specifically drew a distinction between the provision of health services to the public and the provision of health services to prisoners. 960 F.2d at 1337. Ample precedent exists to establish that the provision

of medical services to prisoners is a traditional state function. In *West*, the Supreme Court held that a private doctor who contracted with the state to provide part-time orthopedic care to inmates at a state prison was a state actor. 487 U.S. at 51, 108 S.Ct. 2250; *see also Estelle v. Gamble*, 429 U.S. 97, 107–08, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."); *Wolotsky*, 960 F.2d at 1337 (describing the Court's opinion in *West* as concluding that "the state had contracted with the physician to provide his professional services in fulfillment of the state's legal obligation"); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir.1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.' ").

Given that providing medical care to inmates is a state function, the question becomes whether mental healthcare in particular is included within the state's obligation to provide "medical care." In arguing that providing mental-health services to inmates is not a public function, CCI relies on *Ellison v. Univ. Hosp. Mobile Crisis Team*, 108 Fed.Appx. 224 (6th Cir.2004) (unpublished) and *Saalman v. Reid*, No. 04–0371 2006 WL 278412 (S.D.Ohio Feb. 3, 2006) (unpublished). CCI contends that the court in *Ellison* held that an independent psychological assessment is not fairly attributable to the state because such an evaluation is not a state function. CCI's reading of *Ellison* is flawed. The Sixth Circuit, in *Ellison*, held that when a private entity, licensed and regulated by the state, participates in a "civil commitment," it is not a state actor because the act of "civil commitment" is not a traditional public function. *Ellison*, 108 Fed.Appx. at 226. The court's deci-

sion did not address whether the provision of mental healthcare in prison is a traditional state function.

In *Saalman*, without extended discussion or an explication of the facts of the case, the court held that a private social worker whose sole function was to "make a recommendation to the relevant sheriff's deputy whether a person is a suicide risk and therefore should be placed on a suicide watch" did not perform a public function. *Saalman*, 2006 WL 278412 at *4. *Saalman*, however, is not controlling authority. In addition, in the absence of any factual detail, specifically the level of involvement the social worker had in the provision of mental healthcare services at the prison, it is impossible to determine the basis for the court's holding in *Saalman*. This is especially true given the fact that, in *Nutter*, the same court held that a social worker who provides all the mental-health services at a prison is performing a public function.

The provision of mental healthcare in prisons is a obligation of the state and therefore a public function. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) ("While the right to medical care for serious medical needs does not encompass the right 'to be screened correctly for suicidal tendencies,' we have long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner"); *see also Yellow Horse v. Pennington Cty.*, 225 F.3d 923, 927 (8th Cir.2000) (holding that a prisoner "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to"). Access to adequate mental-health treatment is part of the package of basic rights to which every prisoner is entitled under the Eighth Amendment. *See generally, id.* Much like the orthopedic treatment discussed in *West*, supplying mental-healthcare to inmates is an essen-

tial component of providing adequate medical treatment to inmates under the Eighth Amendment.

CCI argues that, even if this Court holds that providing mental healthcare to inmates is a public function, because "providing suicide assessments on an as-needed basis is clearly not the same and is dissimilar to providing full-time mental-health services," CCI did not act under color of state law. In essence, CCI contends that because of its limited role in mental healthcare at COYC, it was not a state actor under the public function test. This argument is without merit. The foregoing authorities establish that mental healthcare in prisons is a public function. By extension, each sub-division of mental healthcare is also a public function. If this Court were to adopt CCI's argument, the government could outsource each aspect of its prison healthcare system to a different private entity, and each entity could claim that it is not a state actor because it performs only a limited function within the overall prison medical system. The Supreme Court in *West* already held that a private entity may not escape liability as a state actor merely because of the limited amount of time in which it performs a state function. 487 U.S. at 56–57, 108 S.Ct. 2250 ("It is the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law.... Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").

In its reply brief, CCI alludes to a quote from *Comstock*, 273 F.3d 693 at 702, which

states that "the right to medical care for serious medical needs does not encompass the right to be screened correctly for suicidal tendencies." CCI argues, based on this quote, that even if the provision of mental-healthcare services to inmates is an essential state function, providing suicide screening is not. This argument is without merit. First, providing mental-healthcare, including suicide assessments, is part of the state's public function. Second, *Comstock* does not stand for the proposition that suicide screening in prison is not a public function. The issue in *Comstock* was whether the right to a suicide assessment was a clearly established right under the facts of that case, not whether the provision of such an assessment was a public function. The Sixth Circuit held that if a prison psychologist subjectively perceived, and was deliberately indifferent to, a prisoner's risk of suicide, the prisoner's estate could state a claim for a violation of the prisoner's Eighth Amendment rights under 42 U.S.C. § 1983. *Id.* Moreover, the Sixth Circuit concluded that, a prisoner's constitutional right to continuing medical treatment, once he had been determined to be suicidal, was clearly established. *Id.* Third, in this case, Plaintiff alleges that Probst communicated his desire to commit suicide to Giametta. Once COYC was aware of Probst's imminent threat to commit suicide, his mental health became a "serious medical" need which the state had an obligation to address. The means through which COYC chose to address it is part of its mental healthcare package, which is a public function. Thus, CCI is a state actor under the public function test.

 Additionally, at oral argument, CCI argued that, based on *Comstock*, Probst's right to be "correctly screened" for suicidal tendencies was not clearly established and, thus, CCI is entitled to qualified immunity. This argument is without merit. It is well established that a moving party may not raise a new issue for the first time in its reply brief or at oral argument. *See, e.g., In re: FirstEnergy Corp. Sec. Litig.*, 316 F.Supp.2d 581, 599 (N.D.Ohio 2004); *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.* 367 F.Supp.2d 1191, 1207 n. 28 (S.D.Ohio 2005). Moreover, although the right to be "correctly screened" for suicidal tendencies is not clearly established, once it has been shown that a prisoner is at risk for suicide, he has a clearly established right to medical treatment free from deliberate indifference. *See Comstock*, 273 F.3d at 703. Viewing the evidence in the light most favorable to the Plaintiff, particularly Probst's history of erratic behavior and purported statement that he planned to kill himself, a jury could conclude that CCI's recommendation to take him off suicide watch amounted to deliberate indifference.

### D. Plaintiff's State–Law Claims

CCI argues that once this Court grants summary judgment in its favor on Plaintiff's § 1983 claim, it must dismiss Plaintiff's state-law claims for lack of pendent jurisdiction. This Court, however, denies defendant's motion for summary judgment on Plaintiff's § 1983 claim and, thus, it will retain supplemental jurisdiction over Plaintiff's tort claims.

### V. CONCLUSION

For the reasons stated herein, this Court finds that CCI and Plumley were state actors under the public function test for purposes of 42 U.S.C. § 1983. Thus, their Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**